585 A.2d 1078

**COMMONWEALTH of Pennsylvania, Appellant,**

v.

**Steven JENKINS, Appellee.**

Superior Court of Pennsylvania.

Argued Oct. 17, 1990.

Filed Jan. 30, 1991.

Eric Schoenberg, Asst. Dist. Atty., Philadelphia, for Com.

Gerald A. Stein, Philadelphia, for appellee.

Before DEL SOLE, POPOVICH and BROSKY, JJ.

POPOVICH, Judge:

This case involves an appeal from the order of the Court of Common Pleas of Philadelphia County granting a motion to suppress evidence filed by the defendant/appellee, Steven Jenkins, and appealed by the Commonwealth.[1] We reverse.

In reviewing a suppression court's order suppressing evidence, we, as an appellate court, must consider only the evidence of the defendant's witnesses, and only so much of the evidence presented by the prosecution as remains uncontradicted by the record as a whole. *Commonwealth v. Hamlin*, 503 Pa. 210, 215–16, 469 A.2d 137, 139 (1983). When the evidence supports the factual findings of the suppression court, we may reverse only if there is an error of law. *Commonwealth v. Reddix*, 355 Pa.Super. 514, 518, 513 A.2d 1041, 1042 (1986). In the case at bar, the defendant/appellee presented no witnesses. Therefore, the Commonwealth's evidence remains uncontradicted in the record. Because there is no question that the factual findings are supported by the record, we would normally address ourselves only to the validity of the court's inferences and legal conclusions. See *Commonwealth v. Cameron*, 385 Pa.Super. 492, 496–97, 561 A.2d 783, 785 (1989). However, to appreciate our ruling, the facts need to be recounted; to-wit: At approximately 1:00 p.m. on the 12th of March, 1988, Philadelphia Police Officer Timothy King, in the company of his partner, was assigned to the narcotics strike-force and directed to survey the area at 8th and Butler Streets, "a source of many community complaints about drug traffic." As told by Officer King, as to the day and time in question, he saw:

[1]. The Commonwealth, in its brief to us, asserts that the grant of the motion to suppress effectively terminates its prosecution of the defendant. As such, this case is properly before us for review. See *Commonwealth v. Dugger*, 506 Pa. 537, 486 A.2d 382 (1985); *Commonwealth v. Bosurgi*, 411 Pa. 56, 190 A.2d 304 (1963), cert. denied, 375 U.S. 910, 84 S.Ct. 204, 11 L.Ed.2d 149 (1963); *Commonwealth v. Slovikosky*, 374 Pa.Super. 441, 543 A.2d 553 (1988).

... the Defendant Jenkins on the southeast corner of 8th and Butler with a couple of other males.

After a few minutes I observed the Defendant walk across the street with one male to the west side of the street to a car that was parked in front of 3744 North 8th. It was a tan Subaru, Pennsylvania License Plate GBX 226.

He then took a key out of his right pants pocket, opened up the trunk.

\* \* \* \* \* \*

He opened a large yellow bag and reached inside and pulled out a plastic bag with numerous green packets inside. Handed it to the male and then shut the trunk.

Suppression Hearing Transcript, 3/3/89 at 6 & 7. Continuing, the police officer testified that he observed the defendant pull a clear plastic bag containing numerous (green and blue plastic) packets containing a white substance (allegedly cocaine) from the larger yellow bag.

With nothing obstructing his view, the police officer's observations of a white powder inside the transparent bags were made at a distance of 60–70 yards with field glasses. He added that he had seen "on numerous occasions" similar packets and believed them to contain, "based on past experience and past contacts with this type of packaging", cocaine. The officer also saw the defendant remove a second "bundle" (containing 10–20 different size packets) and transfer it to a second unidentified male. Because no money was exchanging hands, the officer thought that the defendant was "passing out these bundles to his co-workers, more or less, for them to sell...."

Officer King returned to his vehicle and informed his partner of what he had seen. The two then drove to 8th and Butler and placed the defendant under arrest. Officer King removed a key from the defendant's pocket and opened the trunk of the Subaru. He found a large yellow plastic bag containing 44 clear "ziploc" bags, each of which contained 5 blue and green transparent packets with white powder. Additional bags were found bringing the total

weight to 393 grams of cocaine found in the vehicle.[2] Also found inside the trunk was an unloaded 12–gauge shotgun. The barrel and stock were sawed so that the over-all length was twenty-six inches.

After the evidence was removed and placed in a property-receipt bag # 156159, it was sent to headquarters for storage until trial. Thereafter, a preliminary hearing was conducted in which the jurist found that the Commonwealth had presented a *prima facie* case warranting the defendant be held for trial. Prior to trial, however, a suppression hearing was held in which the court determined that, albeit the police had probable cause to arrest the defendant, "the police had time to secure a search warrant for the vehicle and were simply not diligent in their constitutional duties." Lower Court Opinion at 10 (Citation omitted).

Because the court found that there were no exigent circumstances excusing the police's failure to obtain a search warrant, nor was the search conducted incident to a lawful arrest[3] given the defendant's removal from the vehicle and being restrained by the second officer, the absence of a warrant was fatal to the Commonwealth's case. An appeal was perfected by the Commonwealth challenging the suppression of the evidence as inconsistent with established case law dealing with automobile searches and seizures.

We find that the court below erred in suppressing the evidence seized by police, and we do so on the strength of *United States v. Ross*, 456 U.S. 798, 102 S.Ct. 2157, 72 L.Ed.2d 572 (1982).

In *Ross*, a known informant advised police that Ross was selling narcotics out of the trunk of a vehicle parked at a specified address. Also, the informant gave police a description of the defendant, the color, model and license

**2.** Officer King's partner (Officer Joseph Muzyka) was certified to perform the Beckton–Dickinson Field Test "G" and found the contents to test positive for cocaine.

**3.** See *New York v. Belton*, 453 U.S. 454, 101 S.Ct. 2860, 69 L.Ed.2d 768 (1981) and *Commonwealth v. Henry*, 358 Pa.Super. 306, 517 A.2d 559 (1986).

number of the automobile out of which the drugs were being sold. The police drove to the scene and confirmed the information about the defendant and his vehicle. When the defendant drove to a different location, the police followed and stopped him. The police directed the defendant to exit the vehicle.

While the defendant was searched, the interior of the vehicle was examined and found to contain a bullet on the front seat and a pistol in the glove compartment. The defendant then was arrested and handcuffed. One of the officers removed the defendant's keys and opened the trunk where he found a closed brown bag. He opened the bag and discovered a number of glassine bags containing a white powder. The officer replaced the bag, closed the trunk and drove the vehicle to headquarters.

At the police station, the vehicle was searched thoroughly and found to contain $3,200.00 in cash. Thereafter, a laboratory test of the powder determined it to be heroin. The defendant was charged with possession with intent to distribute heroin.

Ross' efforts to have the drugs and money suppressed proved fruitless. Following his conviction, a three-judge panel of the Court of Appeals of the District of Columbia reversed his conviction on the ground that, albeit the police lawfully could search the automobile—including the trunk—without a warrant, the case of *Arkansas v. Sanders*, 442 U.S. 753, 99 S.Ct. 2586, 61 L.Ed.2d 235 (1979), validated the warrantless search of the paper bag but invalidated the seizure of the leather pouch where the money had been found. As a result, a new trial was required.

The Court of Appeals, this time sitting en banc, rejected the panel's conclusion. It held that the police should not have opened either container without first obtaining a warrant. On appeal to the United States Supreme Court, the matter was given in-depth analysis beginning with the seminal case of *Carroll v. United States*, 267 U.S. 132, 45 S.Ct. 280, 69 L.Ed. 543 (1925), which permitted the warrantless search and seizure of an automobile driven by Carroll

when federal agents received information ("probable cause existed") that Carroll and his passenger were "bootleggers" transporting liquor in violation of the now repealed National Prohibition Act.

The *Carroll* Court condoned the ripping of a seat cushion in the rumble-seat of the roadster and uncovering liquor bottles concealed therein. It did so using the following language:

> On reason and authority the true rule is that if the search and seizure without a warrant are made upon probable cause, that is, upon a belief, reasonably arising out of circumstances known to the seizing officer, that an automobile or other vehicle contains that which by law is subject to seizure and destruction, the search and seizure are valid. The Fourth Amendment is to be construed in the light of what was deemed an unreasonable search and seizure when it was adopted, and in a manner which will conserve public interests as well as the interests and rights of individual citizens.

Id. at 149, 45 S.Ct. at 283–84. Thus, it was the "impracticality" of obtaining a warrant to search an automobile in transit that provided the basis for the *Carroll*-automobile-exception, i.e., permitting a warrantless search provided the "officers ha[d] probable cause to believe that the vehicle contain[ed] contraband." Id. at 153–54, 45 S.Ct. at 285; *Ross*, 456 U.S. at 807–08, 102 S.Ct. at 2163–64; *Chambers v. Maroney*, 399 U.S. 42, 52, 90 S.Ct. 1975, 1981–82, 26 L.Ed.2d 419 (1970). If this were present, then an immediate search of the contents of a vehicle could take place. Id.

However, in *United States v. Chadwick*, 433 U.S. 1, 97 S.Ct. 2476, 53 L.Ed.2d 538 (1977), the Court refused to permit the warrantless search of a footlocker placed in an automobile. Rather, the Court reaffirmed the general principle that closed packages and containers may not be searched without a warrant since "a person's expectations of privacy in personal luggage are substantially greater than in an automobile." Id. at 13, 97 S.Ct. at 2484.

On facts similar to those in *Chadwick,* the Court in *Sanders,* supra, refused to uphold a warrantless search of a suitcase placed in the trunk of a taxi. As the then Chief Justice noted in his opinion concurring in judgment:

> Because the police officers had probable cause to believe that respondent's green suitcase contained marijuana before it was placed in the trunk of the taxicab, their duty to obtain a search warrant before opening it is clear under *United States v. Chadwick,* [supra]....
>
> ... Here, as in *Chadwick,* it was the *luggage* being transported by respondent at the time of the arrest, not the automobile in which it was being carried, that was the suspected locus of the contraband. The relationship between the automobile and the contraband was purely coincidental, as in *Chadwick.* The fact that the suitcase was resting in the trunk of the automobile at the time of respondent's arrest does not turn this into an "automobile" exception case.

442 U.S. at 766–67, 99 S.Ct. at 2594 (Emphasis in original).

As noted by the Court in *Ross,* the *Sanders* decision could also be read to suggest:

> ... that a warrantless search of a container found in an automobile could never be sustained as part of a warrantless search of the automobile itself.[19]

---

[19.] The Court stated that "the extent to which the Fourth Amendment applies to containers and other parcels depends not at all upon whether they are seized from an automobile." 442 U.S., at 764, n. 13, 99 S.Ct., at 2593, n. 13. This general rule was limited only by the observation that "[n]ot all containers and packages found by police during the course of a search will deserve the full protection of the Fourth Amendment. Thus, some containers (for example a kit of burglar tools or a gun case) by their very nature cannot support any reasonable expectation of privacy because their contents can be inferred from their outward appearance. Similarly, in some cases the contents of a package will be open to 'plain view,' thereby obviating the need for a warrant." *Ibid.*

456 U.S. at 814 & n. 19, 102 S.Ct. at 2167 & n. 19.

The last case scrutinized by the *Ross* Court was *Robbins v. California,* 453 U.S. 420, 101 S.Ct. 2841, 69 L.Ed.2d 744 (1981), wherein it considered whether police, who are enti-

tled to conduct a warrantless search of an automobile stopped on a public roadway, may open a container found within the vehicle. The police there opened the tailgate of a station wagon and raised the cover of a recessed luggage compartment. In the compartment they found two packages wrapped in green opaque plastic. The packages were unwrapped and found to contain marijuana. Robbins was charged with various drug offenses and was denied his motion to suppress the evidence seized.

On certiorari, the Supreme Court reversed on the ground that all containers are equally protected by the Fourth Amendment unless their contents are in plain view. More particularly, *Robbins'* plurality concluded that, consistent with *Sanders*, "a closed piece of luggage found in a lawfully searched car is constitutionally protected to the same extent as are closed pieces of luggage found anywhere else." 453 U.S. at 425, 101 S.Ct. at 2845.

The *Ross* Court viewed the *Robbins* decision as one in which a thorough examination of the "automobile exception", i.e., whether, in the course of a legitimate warrantless search of an automobile, police are entitled to open containers found within the vehicle, had not been pressed by the litigants. Nonetheless, such a question could be addressed by the *Ross* Court because the parties had framed the issue for inquiry left open in *Robbins*.

In reversing the invalidation of the warrantless search and seizure of the glassine opaque packets from Ross' automobile by the en banc Court of Appeals for the District of Columbia, the high Court wrote in pertinent part that:

... the decision in *Carroll* was based on the Court's appraisal of practical considerations viewed in the perspective of history. It is therefore significant that the practical consequences of the *Carroll* decision would be largely nullified if the permissible scope of a warrantless search of an automobile did not include containers and packages found inside the vehicle. Contraband goods are rarely strewn across the trunk or floor of a car; since by their very nature such goods must be withheld from

public view, they rarely can be placed in an automobile unless they are enclosed within some form of container.

\* \* \* \* \* \*

... an individual's expectation of privacy in a vehicle and its contents may not survive if probable cause is given to believe that the vehicle is transporting contraband. Certainly the privacy interests in a car's trunk or glove compartment may be no less than those in a moveable container. An individual undoubtedly has a significant interest that the upholstery of his automobile will not be ripped or a hidden compartment within it opened. These interests must yield to the authority of a search, however, which—in light of *Carroll*—does not itself require the prior approval of a magistrate. The scope of a warrantless search based on probable cause is no narrower—and no broader—than the scope of a search authorized by a warrant supported by probable cause. Only the prior approval of a magistrate is waived; the search otherwise is as the magistrate could authorize.

The scope for a warrantless search of an automobile thus is not defined by the nature of the container in which the contraband is secreted. Rather, it is defined by the object of the search and the places in which there is probable cause to believe that it may be found.

\* \* \* \* \* \*

Of greatest importance, we are convinced that the rule we apply in this case is faithful to the interpretation of the Fourth Amendment that the Court has followed with substantial consistency throughout our history.

We reaffirm the basic rule of Fourth Amendment jurisprudence stated by Justice Stewart for a unanimous Court in *Mincey v. Arizona,* 437 U.S. 385, 390 [98 S.Ct. 2408, 2412, 57 L.Ed.2d 290 (1978)]:

"The Fourth Amendment proscribes all unreasonable searches and seizures, and it is a cardinal principle that 'searches conducted outside the judicial process, without prior approval by judge or magistrate, are *per se* unreasonable under the Fourth Amendment—subject

only to a few specifically established and well-delineated exceptions.' *Katz v. United States*, 389 U.S. 347, 357 [88 S.Ct. 507, 514, 19 L.Ed.2d 576 (1967)]."

The exception recognized in *Carroll* is unquestionably one that is "specifically established and well delineated." We hold that the scope of the warrantless search authorized by that exception is no broader and no narrower than a magistrate could legitimately authorize by warrant. If probable cause justifies that search of a lawfully stopped vehicle, it justifies the search of every part of the vehicle and its contents that may conceal the object of the search.

456 U.S. at 820, 823–25, 102 S.Ct. at 2172–73 (Footnotes omitted).

Under the imprimatur of *Ross,* we find that Officer King observed the defendant open the trunk to a vehicle on two occasions spanning ten minutes. On each occasion, the officer was able to see the defendant place his hand in a clear, yellow plastic bag containing numerous plastic packets holding a white substance believed by the officer to be cocaine. Officer King testified on direct examination that he could see through the packets because they were "transparent", and, as such, a "white powder" was observable through his field glasses and nothing obstructed his view of the substance from his vantage point 60 to 70 yards away.[4]

The officer had seen similar packets in the past "on numerous occasions" and believed, "based on his past experience [making 50 to 60 cocaine arrests] and contacts with this type of packaging", the packets contained cocaine.

4. To the extent that the defendant argues that on cross examination Officer King denied being able to see the content of the plastic bags from his location with binoculars, it is axiomatic that questions of credibility are for the fact-finder, who may believe all, some or none of the evidence proffered. Instantly, the record is supportive of the suppression court's finding of fact at No. 3 that Officer King "observed ... packets containing white powder" removed by the defendant from the trunk of the vehicle and hand them to another male. As such, we see no reason to disturb this finding, nor do we have the authority to do so in the face of record evidence to buttress the same. See *Commonwealth v. Hackney,* 353 Pa.Super. 552, 510 A.2d 800 (1986).

After the officer observed the defendant make the second transaction from the trunk of the vehicle to an unidentified male, and again witnessed no money being transferred, he and his partner drove to the scene and arrested the defendant. Once a key had been removed by the police from the defendant's person, the trunk was opened and 393 grams in 44 see-through plastic bags were discovered containing cocaine.

Consistent with the dictates of *Ross*, we hold that the police had probable cause to believe that a crime was being committed and the defendant was involved in its commission. Moreover, the defendant, on two occasions on a public street during midday, opened the trunk of his vehicle and exposed the interior to anyone passing by and seeking to view its contents. The police did so with the use of binoculars. Given the circumstances of the sighting, in a high-crime area,

> ... the police cannot reasonably be expected to avert their eyes [even if it is by the use of enhanced vision] from evidence of criminal activity that could have been observed by any member of the public. Hence, "[w]hat a person knowingly exposes to the public, even in his own home, or office, is not a subject of Fourth Amendment protection."

*California v. Greenwood*, 486 U.S. 35, 41, 108 S.Ct. 1625, 1629, 100 L.Ed.2d 30 (1988) (Citations omitted); see also *Commonwealth v. Oglialoro*, 525 Pa. 250, 258, 579 A.2d 1288, 1291–92 (1990); Concurring and Dissenting Opinion by Popovich, J. in *Commonwealth v. Lemanski*, 365 Pa.Super. 332, 359–61, 529 A.2d 1085, 1098–99 (1987).

At bar, the police were where they had a right to be and espied the defendant engaging in criminal activity on a public street. Consequently, because probable cause existed to justify the search of the lawfully stopped vehicle, the same evidence justified the search of every part of the vehicle and its contents that could have concealed the object of the search. *Ross*, supra; *Commonwealth v. Rodriguez*, —— Pa. ——, 585 A.2d 988 (1991).

Accordingly, the ruling of the court below being to the contrary, we reverse.

Order reversed.