622 A.2d 351

**In the Interest of J.H.**

**Appeal of J.H.**

Superior Court of Pennsylvania.

Argued Jan. 6, 1993.
Filed March 22, 1993.

clarified in light of the the additional expenses which must now be included to calculate the cost of Jeison's education.

Sarah Kerr, Philadelphia, for appellant.

Anthony Pomerantz, Asst. Dist. Atty., Philadelphia, for Com., appellee.

Before CIRILLO, BECK and KELLY, JJ.

BECK, Judge.

This is an appeal from an Order of Commitment entered in Juvenile Court in Philadelphia County. Appellant asserts that the trial court erred in denying his motion to suppress. We agree and so reverse.

On October 21, 1991, police were contacted by a woman claiming to have information about a murder that occurred two days earlier on October 19, 1991. Two officers were dispatched to interview the woman, who informed them that five minutes earlier at a certain address, she saw a dark-complected black male who may have been involved in the murder. She described the male as approximately five-feet-seven-inches tall, wearing blue jeans and a peach jacket. The officers promptly went to the address, knocked on the door and got no answer. At that moment, they saw a black male in a peach jacket and blue jeans (appellant) walking toward them. They immediately searched appellant and found 45 vials of crack cocaine on his person. He was placed in handcuffs and transported to the Police Narcotics Division. He ultimately was found guilty of possession with intent to deliver.

■ Appellant asserts that the trial court erred in denying his motion to suppress. With respect to a trial court's denial of suppression, we review only the court's conclusions of law; in doing so we consider the prosecution's evidence and any uncontradicted evidence offered by appellant. *Commonwealth v. Woods*, 404 Pa.Super. 432, 590 A.2d 1311, 1312, *appeal denied*, 528 Pa. 637, 598 A.2d 994 (1991).

■ The Commonwealth insists that based on the informant's description, the police had probable cause to arrest appellant at the time they searched him; therefore, a complete search incident to arrest was proper.[1] It is clear that in order for police to make a warrantless arrest, they must have probable cause; where probable cause to arrest does not exist, any evidence seized in a search incident to arrest must be suppressed. *Commonwealth v. Lovette*, 498 Pa. 665, 450 A.2d 975, 981 (1982), *cert. denied*, 459 U.S. 1178, 103 S.Ct. 830, 74 L.Ed.2d 1025 (1983). Probable cause is established when the facts and circumstances which are within the knowledge of the officer at the time of the arrest, and of which he has reasonably trustworthy information, are sufficient to warrant a person of reasonable caution to conclude that the suspect has committed a crime. *Commonwealth v. Rodriguez*, 526 Pa. 268, 585 A.2d 988, 990 (1991).

■ Our standard for determining the existence of probable cause is an analysis of the totality of the circumstances. *Commonwealth v. Gray*, 509 Pa. 476, 503 A.2d 921, 926 (1985) (citing *Illinois v. Gates*, 462 U.S. 213, 238–39, 103 S.Ct. 2317, 2332, 76 L.Ed.2d 527 (1983)). In the instant case, probable cause came from an informant's tip. We must be satisfied that the tip was reliable and, therefore, assess the informant's veracity as well as the basis for her knowledge in order to determine whether the officers had probable cause to arrest appellant. While the "totality" standard represents a loosen-

1. The order denying suppression was not based on a search incident to arrest; indeed, the suppression court explicitly found that the police did not have probable cause to arrest. While we can affirm the ruling of a lower court on any basis, *Commonwealth v. Terry*, 513 Pa. 381, 404, 521 A.2d 398, 409, *cert. denied*, 482 U.S. 920, 107 S.Ct. 3198, 96 L.Ed.2d 685 (1987), we find no basis of support for the order in this case.

ing of the previously rigid, two-prong test for probable cause, the dual basis of knowledge and veracity prongs are still very much a part of our inquiry.[2] *Commonwealth v. Davis*, 407 Pa.Super. 415, 595 A.2d 1216, 1219 (1991), *appeal denied*, 530 Pa. 630, 606 A.2d 900 (1992).

■ There are a number of ways to determine the reliability of an informant's tip. We have been satisfied that an informant's tip constitutes probable cause where police have been able to provide independent corroboration of the tip or where the informant previously provided police with accurate information of criminal activity, or where the informant himself participated in the criminal activity. *See Commonwealth v. Ogborne*, 410 Pa.Super. 164, 599 A.2d 656 (1991) (probable cause found where informant's previous information was accurate and police corroborated tip), *appeal denied*, 530 Pa. 631, 606 A.2d 901; *Commonwealth v. Carlisle*, 348 Pa.Super. 96, 501 A.2d 664 (1985), *aff'd*, 517 Pa. 36, 534 A.2d 469 (1986) (probable cause established where informant engaged in criminal activity with accused, provided police with past information and there was independent corroboration).

■ In the instant case, the evidence does not support a finding of probable cause. Glaringly absent at the suppression hearing was *any* testimony regarding the basis of the informant's knowledge. It was not claimed that she was an eyewitness to the crime or had information from an individual involved in the murder.[3] Nor was there any testimony of the informant's previous cooperation with the police. The Com-

2. Prior to *Gates*, the Commonwealth had to satisfy the *Aguilar–Spinelli* test, which required a showing of both the basis for the informant's knowledge and independent facts establishing the informant's reliability. *See Commonwealth v. Gray*, 509 Pa. at 481, 503 A.2d at 924. Our supreme court adopted the *Gates* totality test because it was "more practical" and based on a common sense non-technical analysis. *Id.* at 484, 503 A.2d at 925.

3. At the suppression hearing, one of the officers testified as follows:
    It was a burglary, a rape, and a homicide and there was questions [sic] as to that complainant which, you know, I don't want to reveal ... She had information that may have led us to believe that this other individual was involved in the homicide.
    It may be that the officer had information which could have proved the informant's reliability or revealed her basis of knowledge; if so, such

monwealth cites *Commonwealth v. Sudler*, 496 Pa. 295, 436 A.2d 1376 (1981) and argues that because the tip was from an "average citizen," police are entitled to rely on it. In *Sudler*, the informants were acquaintances of the accused to whom the accused admitted committing the crime. The acquaintances gave sworn statements to police. *Id.* at 299, 436 A.2d at 1377. There was no such testimony in the instant case.

Further, there was no independent investigation by the police to link appellant with the murder. The only evidence adduced at the hearing was that there was a question whether another individual, in addition to a suspect already in custody, was involved in the crime. The Commonwealth claims that the tip was "verified" by the officers because they found appellant, matching the informant's description, in the area she described. It is this verification, the Commonwealth argues, that gave the officers probable cause. We disagree. A mere description of an individual, with nothing more, does not establish probable cause.[4] This information, appellant's clothing and location, does not support the reliability of the informant's tip; it is information available to anyone and is not indicative of criminal conduct. *See Commonwealth v. Edmunds*, 526 Pa. 374, 382 n. 3, 586 A.2d 887, 891 n. 3 (1991) (citing *United States v. Leon*, 468 U.S. 897, 903 n. 2, 104 S.Ct. 3405, 3410 n. 2, 82 L.Ed.2d 677 (1984)).

In sum, the suppression court was presented with no evidence tending to prove that the information given to police was reasonably trustworthy. *See Rodriguez*, 526 Pa. at 272–

information should have been presented to the suppression court. While our inquiry is guided by the facts and circumstances within the officer's knowledge at the time of the arrest/search, we are aware of only those facts and circumstances to which the officer testifies.

4. The facts of this case are readily distinguished from *Commonwealth v. Langana*, 503 A.2d 921 (Pa.1988). In *Langana*, the accused was present at the location to which the officer was directed. In addition, the accused was observed "casing a business establishment with a pair of binoculars in the pouring rain." *Id.* at 1354. The court found that the "suspicious conduct under the circumstances, *taken as a whole*, suggested that the [accused] was involved in criminal activity" and, therefore, the officer possessed reasonable suspicion to conduct a frisk for weapons under *Terry v. Ohio*, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968). *Id.* (emphasis supplied).

73, 585 A.2d at 990. Accordingly, the evidence seized from appellant should have been suppressed.[5]

Order reversed. Jurisdiction relinquished.

CIRRILLO, J., files a Dissenting Statement.

CIRILLO, Judge, dissenting:

I respectfully dissent from the majority's opinion. I have written extensively on the policy reasons for relaxing constitutional protections for juvenile court adjudication. *See e.g. In the Interest of Davis,* 377 Pa.Super. 46, 546 A.2d 1149 (1988) (Cirillo, P.J., dissenting). To reiterate, juvenile proceedings are unique because the goal is rehabilitation rather than punishment. *Id.* at 70, 546 A.2d at 1162. The juvenile justice system is best able to attain its goals by relaxing the full panoply of constitutional rights to which an adult would be entitled. The strict application of the suppression remedy for an unlawful search of a juvenile works against the rehabilitative opportunity afforded through juvenile adjudication.

Accordingly, I dissent.

---

**5.** We need not consider whether the officers had information sufficient to establish reasonable suspicion for an investigatory stop and limited search under *Terry v. Ohio, supra.* A valid *Terry* stop would have authorized a pat down of appellant for weapons to insure the officers' safety. Here, however, the officer testified explicitly that he did not conduct a pat down for weapons, but searched appellant "completely."