642 A.2d 520

**COMMONWEALTH of Pennsylvania, Appellant.**

v.

**David MALSON.**

Superior Court of Pennsylvania.

Argued March 3, 1994.

Filed June 1, 1994.

156

---

Anthony Pomeranz, Asst. Dist. Atty., Philadelphia, for Com., appellant.

John Belli, Philadelphia, for appellee.

Before ROWLEY, President Judge, and SAYLOR and HESTER, JJ.

ROWLEY, President Judge:

The Commonwealth has appealed from a trial court order granting appellee's motion for the suppression of physical

evidence. On appeal, it is contended that "the [trial] court committed a clear error of law by suppressing cocaine and cash that police seized from [David Malson (hereinafter "appellee") ] when they arrested him, after watching him conduct what they [ ] believed to be a drug transaction on a Germantown street corner." We do not agree, and therefore, we affirm.

Initially, we note that in reviewing the grant of a suppression motion "[a]n appellate court must first ascertain whether the record supports the factual findings of the suppression court, and then determine the reasonableness of the inferences and legal conclusions drawn therefrom." *Commonwealth v. Burnside,* 425 Pa.Super. 425, 429, 625 A.2d 678, 680 (1993), *quoting, Commonwealth v. Oglialoro,* 377 Pa.Super. 317, 318, 547 A.2d 387, 387 (1988), *aff'd,* 525 Pa. 250, 579 A.2d 1288 (1990). Our standard has been stated as follows:

> "In reviewing the findings of a suppression court where the Commonwealth is appealing, we must consider only the evidence of the defendant's witnesses and so much of the evidence for the prosecution as read in the context of the record as a whole remains uncontradicted. [citation omitted]. While we are bound by the [trial] court's findings of fact if supported by the record, we are not bound by the [trial] court's legal conclusions which are drawn from the facts of the case. [citations omitted]."

*Commonwealth v. Dennis,* 417 Pa.Super. 425, 427, 612 A.2d 1014, 1015 (1992), *appeal denied,* 535 Pa. 654, 634 A.2d 218 (1993). "Factual findings wholly lacking in evidence, however, may be rejected." *Burnside, supra,* 425 Pa.Super. at 429, 625 A.2d at 680, *quoting, Commonwealth v. Bennett,* 412 Pa.Super. 603, 606, 604 A.2d 276, 277 (1992).

In this case, the trial court made the following factual findings:

> "On September 14, 1991, at approximately 9:15 p.m., Philadelphia Police Officer Michael Copecki set up surveillance in the area of Hieskil and Armat streets. After a few minutes, Officer Copecki saw [appellee] standing outside of

the sports bar [located on that corner]. Several people walked past [appellee] with no conversation or interaction. A short time later, a black male approached [appellee] [and] handed [appellee] what appear to the officer to be money[, but which Officer Copecki admitted on cross-examination could have been something else] whereupon [appellee] removed a small purse from his right pants pocket. [Appellee] removed an item from the change purse and handed it to the male. The male [then] left in a black auto[mobile].

Officer Copecki continued to watch [appellee] for a brief time [thereafter] but observed no activity. The officer left his surveillance and joined his partner, Officer Peters. Together, they returned to the location and arrested [appellee]. A small brown change purse containing $41 in U.S. currency and eighteen (18) yellow-tinted vials sealed with blue caps w[ere] recovered from [appellee's] right pants pocket.

Officer Copecki had been a police officer for seven years and had been assigned to that area. He made ten previous arrests for narcotics during his seven year career. The officer testified that based on his observation and experience, he believed [appellee] was selling drugs."

(Trial Court Opinion, 11/1/93, pp. 1–2).

Our examination of the record reveals that all of the suppression court's factual findings, save for one, are well supported; we are, however, constrained to point out that the evidence adduced at the suppression hearing clearly indicates that Officer Copecki has made ten previous arrests *at or near the corner of Armat and Hieskil streets* in his seven years with the police force, instead of having made only "ten previous arrests for narcotics during his seven year career[,]" as the suppression court found. (Trial Court Opinion, 11/1/93, p. 2). With the facts of this case firmly in mind, we move on to a consideration of whether the suppression court's legal conclusions are valid.

In this case, the Commonwealth contends that the trial court erred in suppressing $41 in U.S. currency and 18 vials of

crack cocaine which were found on appellee's person in a warrantless search. Specifically, the Commonwealth contends that the search was valid in that it was incident to a lawful arrest because the officer had probable cause to believe that appellee had committed a crime, *to wit*, the sale of narcotics.

"As a general rule, a search conducted without a warrant is presumed to be unreasonable unless it can be justified under a recognized exception to the search warrant requirement." *Commonwealth v. Agnew*, 411 Pa.Super. 63, 74, 600 A.2d 1265, 1271 (1991). "One such exception is a search which is incident to a lawful arrest." *Id.* "It is axiomatic that the validity of a warrantless arrest is determined by considering 'whether, at the moment the arrest was made, the officer had probable cause to make it,' *Beck v. Ohio*, 379 U.S. 89, 91, 85 S.Ct. 223, 225, 13 L.Ed.2d 142 (1964), and the person arrested is believed to be the guilty party." *Commonwealth v. Mallory*, 418 Pa.Super. 614, 616, 614 A.2d 1174, 1176 (1992), *appeal denied*, 533 Pa. 632, 621 A.2d 578 (1993). As this Court stated in *Agnew, supra.*:

> "In this Commonwealth, the standard for evaluating whether probable cause exists is the 'totality of the circumstances' test set forth in *Illinois v. Gates*, 462 U.S. 213, 103 S.Ct. 2317, 76 L.Ed.2d 527 (1983). *See Commonwealth v. Baker*, 513 Pa. 23, 518 A.2d 802 (1986), *Commonwealth v. Gray*, 509 Pa. 476, 503 A.2d 921 (1985). The bench mark of a warrantless arrest is the existence of probable cause, namely, whether the facts and circumstances which are within the knowledge of the officer at the time of the arrest, and of which he has reasonably trustworthy information, are sufficient to warrant a man of reasonable caution in the belief that the suspect has committed or is committing a crime. *Commonwealth v. Wagner*, 486 Pa. 548, 406 A.2d 1026 (1979).

*Commonwealth v. Rodriguez*, 526 Pa. 268, 272–273, 585 A.2d 988, 990 (1991). *See also: Commonwealth v. Fromal*, 392 Pa.Super. 100, 112–113, 572 A.2d 711, 717 (1990); *Commonwealth v. Butler*, 354 Pa.Super. 533, 537–538, 512 A.2d 667, 669–670 (1986).

'When we examine a particular situation to determine if probable cause exists, we consider all the factors and their total effect, and do not concentrate on each individual element ... We also focus on the circumstances as seen through the eyes of the trained officer, and do not view the situation as an average citizen might ... Finally, we must remember that in dealing with questions of probable cause, we are not dealing with certainties. We are dealing with the factual and practical considerations of everyday life on which reasonable and prudent men act. This is not the same 'beyond-a-reasonable-doubt' standard which we apply in determining guilt or innocence at trial. *Commonwealth v. Devlin,* 221 Pa.Super. 175, 289 A.2d 237 (1972).'

*Commonwealth v. Simmons,* 295 Pa.Super. 72, 83, 440 A.2d 1228, 1234 (1982), *quoting Commonwealth v. Kazior,* 269 Pa.Super. 518, 524, 410 A.2d 822, 824–825 (1979)."

*Agnew, supra,* 411 Pa.Super. at 74–75, 600 A.2d at 1271–1272. Finally, we must note that "[i]t is only the probability of criminal activity that is the standard of probable cause. This means less than the evidence which would justify conviction, or even a *prima facie* showing of criminal activity; *but more than mere suspicion." Mallory, supra,* 418 Pa.Super. at 616, 614 A.2d at 1176 (emphasis added).

■ In the instant case, the testimony, viewed in the proper light, reveals that on September 14, 1991, at approximately 9:00 p.m., Officer Copecki, who was not using binoculars, set up a surveillance of the intersection at Armat and Hieskil streets in Philadelphia, at which time he observed appellee, a resident of that area, receive "something green" from an unknown black male in front of a bar located on that corner. The officer could not tell what appellee handed the male in return. When he witnessed this exchange, the officer was at least fifty, and possibly as much as one hundred, feet away. Based on the exchange he had just witnessed, and the fact that the officer had made 10 previous arrests in that precise location, Officer Copecki and his partner "ran up to [appellee] on the pavement, slammed him against [a] car, and arrested

him," after which they searched him and discovered eighteen vials of crack cocaine. (Trial Court Opinion, 11/1/93, p. 3).

"When police observe citizens engaged in seemingly suspicious transactions on public streets, the determination of whether probable cause exists can be a difficult one. In this regard, the Pennsylvania Supreme Court has observed that 'all of the circumstances surrounding a transaction between citizens are to be considered in determining whether law enforcement officers have acted arbitrarily or have acted on the basis of probable cause.' *Commonwealth v. Lawson,* 454 Pa. 23, 27, 309 A.2d 391, 394 (1973), *citing United States v. Henry,* 361 U.S. 98, 80 S.Ct. 168, 4 L.Ed.2d 134 (1959). The Court in *Lawson* elaborated that:

> All of the detailed facts and circumstances must be considered. The time is important; the street location is important; the use of a street for commercial transactions is important; the number of such transactions is important; the place where the small items were kept by one of the sellers is important, the movements and manners of the parties are important.
>
>        *     *     *     *     *     *
>
> It is difficult to isolate any one fact or circumstance and assign to it a given weight. If any one of the facts and circumstances, which we have detailed, were missing, the necessary conclusion of probable cause might not be allowable. *Every commercial transaction between citizens on a street corner when unidentified property is involved does not give rise to probable cause for an arrest.*

*Id.,* 454 Pa. at 28–29, 309 A.2d at 394."

*Agnew, supra,* 411 Pa.Super. at 76, 600 A.2d at 1272. (emphasis added).

■ In this case, we do not think that the facts, as found by the suppression court, give rise to a reasonable conclusion that criminal activity was afoot. Our decision in this regard is supported by several cases which stand for the proposition that an exchange of some unknown items between citizens in a

public place, even a place known to be frequented by drug traffickers, does not, without more, establish probable cause to arrest those citizens. First, in *Commonwealth v. Vassiljev*, 218 Pa.Super. 215, 275 A.2d 852 (1971), this Court held that a search of a defendant's person was unreasonable where police officers arrested the defendant simply because they saw him pass something to another man, even though they did not know what was passed between them.

In 1978, the Pennsylvania Supreme Court considered the case of *Commonwealth v. Greber*, 478 Pa. 63, 385 A.2d 1313, where the:

> "... police had been watching a bowling alley in a high crime area. They observed defendants drive their vehicle into the parking lot of the bowling alley and hand a shopping bag to a juvenile. The juvenile had been standing on the lot, acting as though he were waiting for someone. Upon receiving the bag, the juvenile lifted it to his face and appeared to smell its contents. At this point, the police moved in, blocking the path of the defendants' vehicle and seizing the shopping bag from the juvenile. Marijuana was found in the bag and later in the defendants' vehicle. The trial court ordered that the marijuana be suppressed because the police lacked probable cause to make a lawful arrest. On appeal, the Commonwealth conceded that probable cause had been lacking but asserted that the police had made a lawful investigative *Terry* stop[1]. The Supreme Court rejected this argument and affirmed the suppression court's order. In a plurality opinion, the Court reasoned as follows:

>> The acts of appellees here—riding in a car, stopping at a bowling alley, exchanging a package—were all acts that were outwardly innocent. [citation omitted]. What occurred here was one isolated transaction, not a series of transactions which, under certain circumstances might indicate that an exchange of drugs was taking place. *See, Commonwealth v. Lawson, supra.* Officer Matuszak had no prior information that a drug transaction would occur

1. *Terry v. Ohio*, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968).

on this evening. There was simply no reasonable basis to conclude that this particular package, a shopping bag large enough to contain a countless number of objects, happened to contain illegal drugs. While the officer's curiosity might have been aroused by the action that was witnessed, and while he might have had a hunch that illegal contraband was involved, that is not sufficient. *See Terry v. Ohio, supra; Commonwealth v. Jones,* [474 Pa. 364, 378 A.2d 835 (1977) ] *supra.*

*Commonwealth v. Greber, supra,* 478 Pa. at 68, 385 A.2d at 1316 (per Manderino, J.)."

*Agnew, supra,* 411 Pa.Super. at 77–78, 600 A.2d at 1272–1273.

Thereafter, in *Commonwealth v. Hunt,* 280 Pa.Super. 205, 421 A.2d 684 (1980), this Court held that although an officer had previously made several narcotics arrests at or near the 600 block of Herron Avenue in Pittsburgh, and although he had an anonymous tip that "dope" was being sold at that same location, he did not have probable cause to make an arrest, despite witnessing the defendant and another man engage in "some sort of exchange" at that location and then flee when the officer approached them. This Court so concluded because "the officer could not see what was being exchanged." *Id.* at 208–209, 421 A.2d at 686.

Recently, in *Commonwealth v. Agnew, supra.,* this Court again considered the issue of whether probable cause exists when an officer sees something which he believes to be a drug transaction. There, several officers were conducting surveillance from an unmarked police car in an area known to be frequented by drug traffickers at approximately 8:50 p.m. in April of 1990 when they observed an automobile containing three white males pull into the area, a parking lot behind the "Live Wire Bar."

One of the officers, Officer McIntyre, exited the police vehicle and went across the street for a better view, approximately 30 to 40 yards away from the suspect automobile. Two black males then appeared in the parking lot; one of them approached the automobile, conversed with its occupants, and

then returned to the other black male. The second black male then went to the automobile and reached inside the passenger window. "[A]lthough Officer McIntyre was unable to see any [actual] objects passed between the parties, he believed that he had witnessed a drug transaction." *Id.* 411 Pa.Super. at 72, 600 A.2d at 1270.

The vehicle then left the scene and proceeded to a a parking lot adjacent to DelMont Chemical Company, where the defendants worked. The undercover police car followed, and pulled behind the vehicle, after which the occupants were instructed to exit their automobile. The defendants were then searched and narcotics were found on their persons; drugs were also found protruding from under the front passenger seat. Motions to suppress were filed but the suppression court concluded that the searches were incident to a lawful arrest.

On appeal, this Court reversed the ruling of the suppression court because "[t]he police had no prior information or reason to believe that [the defendants] would be engaging in a drug transaction, nor did they observe [the defendants] in the company of known drug dealers." *Id.* at 79, 600 A.2d at 1273. Therefore, this Court concluded that "[i]t could not be said with any degree of certainty under these circumstances that an isolated contact between appellants and two black males involved any kind of commercial transaction whatsoever, let alone a sale of drugs." *Id.* at 79, 600 A.2d at 1273–1274.

In the instant case, we reiterate the sentiments expressed in *Vassiljev, Hunt, Greber,* and *Agnew* that no citizen may be arrested *merely* for passing an unidentified item to another citizen on a public street. For probable cause to exist, there must be *other facts* which, together with a suspicious exchange of unidentified items, supports a reasonable belief that the exchange is drug related [2]. In this case, such facts did not

**2.** In *Commonwealth v. Dennis,* 417 Pa.Super. 425, 612 A.2d 1014 (1992), *appeal denied,* 535 Pa. 654, 634 A.2d 218 (1993), for example, this Court concluded that probable cause did exist where the officers were aware of *neighbors' complaints* that drug deals were occurring at a particular address when they observed defendant, at that address, accept what appeared to be money in exchange for the transfer of an unidentified item, after which the defendant *fled* back into the house as

exist and thus, appellee's arrest, and the search which ensued, were not legal. We conclude that the trial court properly granted appellee's motion to suppress the fruits of the illegal search.

Order affirmed.

the officers began to approach. In finding that probable cause existed in *Dennis*, this Court "f[ound] particularly compelling ... the fact that *residents* of the area, individuals living on the 1600 block [of Sparks Street], made *multiple* reports to police of drug dealing at 1618 Sparks." *Id.* 417 Pa.Super. at 430, 612 A.2d at 1016 (emphasis added). In the present case, unlike *Dennis*, the officers had no prior knowledge appellee would be dealing in narcotics on that particular corner, nor did appellee attempt to flee when he became aware of the police presence, as did the defendant in *Dennis*. Therefore, we conclude that the two cases are distinguishable; in *Dennis*, unlike the instant case, there were facts other than the exchange itself which gave rise to a reasonable belief that the transaction was drug related.