664 A.2d 154

**COMMONWEALTH of Pennsylvania, Appellant**

v.

**Emilio LOPEZ, Appellee.**

Superior Court of Pennsylvania.

Argued June 15, 1995.

Filed Aug. 29, 1995.

442

Robin Godfrey, Assistant District Attorney, Philadelphia, for the Commonwealth, appellant.

Gerald B. Ingram, Philadelphia, for appellee.

Before POPOVICH, JOHNSON and HOFFMAN, JJ.

**POPOVICH, Judge:**

■ The Commonwealth appeals the order of the Court of Common Pleas of Philadelphia County granting the motion to suppress of the defendant/appellee, Emilio Lopez.[1] We reverse.

The suppression court made the following factual findings: At approximately 9:30 p.m. on the 30th of October, 1992, Philadelphia police officers Robert Fetters and Alberto Rodriquez were in an unmarked vehicle and observed a black male hand currency to a Hispanic male (later identified as Aponte) on the northeast corner of 7th and Butler Streets in exchange for an unidentified item. This prompted the police to locate themselves 30 to 40 feet from Aponte to witness a second black male exchange U.S. currency for a clear plastic vial produced from Aponte's pocket.

Within minutes, Aponte made a hand-motion to the defendant situated 40 feet away on the south side of the street. The defendant reacted by opening the trunk to a 1979 white Cutlass and removing a tied-up plastic bag, approximately 2 inches in diameter, from its interior before handing the object to Aponte, who placed it on the bumper of a vehicle situated next to where he stood.

At this point, having observed these events at a distance of 30–50 feet, the police called for back-up to stop and detain the defendant and Aponte. Within minutes, the police exited their vehicle, approached the defendant standing next to the opened trunk of the 1979 Cutlass and "detained" him while Officer Fetters looked in the trunk and saw clear plastic bags on the floor of the vehicle containing vials with blue caps believed to hold crack cocaine.

The defendant was placed under arrest while Fetters' partner retrieved a clear plastic bag from the vehicle next to Aponte, which was found to contain 18 clear plastic vials. In

---

1. The Commonwealth, in its statement of jurisdiction, certifies that the suppression order substantially handicaps or effectively terminates its prosecution of the case. This permits appellate review of the suppression order. *Commonwealth v. Dugger*, 506 Pa. 537, 486 A.2d 382 (1985).

all, the police confiscated 5 bundles from the trunk, each containing 24 capsules. The defendant filed a motion to suppress the evidence seized "alleging that there was no probable cause to arrest and no probable cause to search or to seize." The court agreed.

On appeal, the Commonwealth argues that the police either had probable cause to arrest, or, in the alternative, were legitimately in a place where they were allowed to be and observed a controlled substance in "plain view" warranting its seizure and the defendant's subsequent arrest therefore.

Before embarking on an analysis of the Commonwealth's arguments, we need to place some matters in perspective, one being the standard of review in matters of suppression (the weight to be given conclusions of law at odds with findings of fact) and the other being the scope of review in probable cause to search or arrest cases. Both topics were discussed by this Court in *Commonwealth v. Albino*, 438 Pa.Super. 562, 652 A.2d 953, 954 & 955 (1995); to-wit:

In reviewing an order granting a motion to suppress evidence, we must determine whether the factual findings of the suppression court are supported by evidence of record. In making this determination, we may consider only the evidence of the defendant's witnesses and so much the Commonwealth's witnesses as fairly read in the context of the record remains uncontradicted. If the evidence supports the factual findings of the trial court, we are bound by such findings, and we may reverse only if the legal conclusions drawn therefrom are erroneous.

\* \* \* \* \* \*

[w]hen we examine a particular situation to determine if probable cause exists, we consider all the factors and their total effect, and do not concentrate on each individual element.... We also focus on the circumstances as seen through the *eyes of the trained officer,* and do not view the situation as an average citizen might.... Finally, we must remember that in dealing with questions of probable cause, we are not dealing with the factual and

practical considerations of everyday life on which reasonable and prudent men act. This is not the same 'beyond a reasonable doubt' standard which we apply in determining guilt or innocence at trial. [Emphasis in original; citations omitted]

Here, the suppression court found as a fact that the police, at a distance of 30–50 feet, observed Aponte engage in two transactions and both instances netted Aponte U.S. currency, while the latter exchange saw a transfer of a clear plastic vial for cash. This was followed by the defendant being directed by Aponte to cross the street but not before the defendant removed a tied-up plastic bag, approximately 2 inches in diameter, from the trunk of a vehicle and carry it to Aponte.

In addition, consistent with the precepts recited in *Albino* allowing for consideration of "so much of the Commonwealth's witnesses [evidence] as fairly read in the context of the record remains *uncontradicted*," and viewing all of the evidence through the eyes of a trained policeman, we note that Officer Fetters opined that the exchanges involving Aponte and the two unknown males were "transaction[s] of U.S. currency for crack cocaine." N.T. 9/22/94 at 6. This was predicated upon the officer's 7 years experience in this area, which was known "basically [as] a high drug-trafficking area" and a location where he had made prior drug arrests. *Id.* at 13.

The suppression court's own findings of fact indicate that, after Aponte had engaged in two exchanges for cash (one for an unidentified item and the second for a clear plastic vial), the defendant reacted to Aponte's hand-gesture by opening the trunk of a vehicle, removing a plastic bag, walking to Aponte and "hand[ing him] a tied-up bag, approximately two inches in diameter." Court Opinion, 11/3/94 at 1 & 2; Findings of Fact Nos. 3, 4 & 7.

All of the police observations were made at a distance of 30 feet when the defendant transferred the plastic bag to Aponte, but the defendant was 50 feet from the police when he entered the trunk area and removed what Officer Fetters indicated

was "a clear plastic bag" containing several vials with a white substance believed to be "crack cocaine." N.T. 9/22/94 at 7–8.

The suppression court thought it "unreasonable to believe a balled up plastic bag would have been identifiable in the dark" given the distance (approximately 30–50 feet) between the police and the defendant. Court Opinion, 11/3/94 at 4–5. Yet, the court found as a fact that, at the same 40–50 foot distance and time, Aponte gave a black male a clear plastic vial for U.S. currency (Finding of Fact No. 3) and police observed the defendant walk toward Aponte and hand him "a tied-up bag, approximately two inches in diameter." (Finding of Fact No. 7)

Albeit in matters of credibility the court, as the initial arbiter of believability, is to be given deference in this area, we are to accord a suppression court's findings of fact credence if and when supported by the record. See *Albino*, supra; *Commonwealth v. Jenkins*, 401 Pa.Super. 580, 585 A.2d 1078, 1083 n. 4 (1991); cf. *Commonwealth v. Stadtfeld*, —— Pa.Super. ——, 665 A.2d 487, 491–492 (1995) (Appellate court not bound by the conclusions of law of the lower court absent evidence in support of the same).

Further, the court's holding that the police lacked probable cause to conduct a warrantless arrest of the defendant and subsequent search of the trunk of his vehicle was tainted has its origin in the disbelief of the police's "observ[ation of] an exchange of a balled-up two inch plastic bag, between two unidentified Hispanic males[—defendant and Aponte—], with their naked eye in the dark." Court Opinion, 11/3/94 at 4.

However, when Findings of Fact No. 3 (Aponte received U.S. currency from black male), No. 4 (Aponte exchanged clear plastic vial for U.S. currency from another black male) and No. 7 (Aponte received "a tied-up bag, approximately two inches in diameter" from the defendant) are at odds with the Conclusion of Law (holding that no probable cause to stop, arrest and search existed), we, as an appellate court, are not bound by such a conclusion. See *Albino*, supra; *Jenkins*, supra; see also *Stadtfeld* supra.

 From our review of the entire record and *uncontradicted* testimony of the Commonwealth's witnesses, we find that, although the police did not have probable cause to arrest the defendant prior to observing what was believed to be crack cocaine in the trunk of the 1979 white Cutlass, the police were presented with enough articulable facts to believe that criminal activity was afoot to "detain" the defendant consistent with a *Terry* [2] stop and maintain the status quo while investigating further the circumstances to either dispel or confirm the presence of criminal activity. " '[T]here is no necessity that the police suspect that the person is armed and dangerous before a valid investigatory stop limited solely to questioning can be performed.' All that need be shown is 'a reasonable suspicion that criminal activity is afoot.' " *Commonwealth v. Dennis*, 289 Pa.Super. 305, 433 A.2d 79, 81 (1981).

Here, once the police had reached the defendant they "detained" him. As the defendant was situated next to the open trunk of the 1979 Cutlass, where the police had a legitimate right to be, they observed (as any member of the passing public could see) the content of the trunk and a "plain view" detection of several clear plastic bags. As articulated by Officer Fetters, he saw:

> ... a large clear plastic bag which contained five smaller sandwich-size bags. Each of the smaller bags had clear plastic vials with blue caps on them, all containing an off-white chunky substance. [The officer] believed this to be crack cocaine.

N.T. 9/22/94 at 9; see *Jenkins*, supra, at 580, 585 A.2d 1078 (Where the police are where they have a right to be, they need not avert their eyes from criminal activity viewable by the public at large).

Preceding the police's approach and detention of the defendant, they observed what they believed were two drug transactions (conceded by the suppression court to be "more than enough probable cause for Aponte's arrest," see N.T. 9/22/94 at 34). Next, the defendant was observed removing a plastic bag from the trunk of a vehicle after receiving a hand-motion

---

2. *Terry v. Ohio*, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968).

from Aponte. Then "[p]olice observed defendant walk to where Aponte was standing and hand Aponte a tied-up bag, approximately two inches in diameter." Court Opinion, 11/3/94 at 2, Finding of Fact No. 7.

All of the aforementioned must be woven into a picture which contains as its backdrop knowledge by the 7-year veteran Officer Fetters that the area was a high drug-trafficking location, and drug arrests had been made by the officer in the same area. Thus, it is this Court's conclusion the police had observed enough facts to justify a "stop" of the defendant. See *Dennis,* supra (citing cases). Once the incriminating evidence (crack cocaine) had been sighted by the police, who had an unobstructed, plain view of the content of the trunk, the circle of probable cause had been completed and warranted the defendant's arrest and subsequent seizure of the drugs.

To the extent that the suppression court's conclusion of law (absence of probable cause to seize or arrest) is predicated upon findings of fact that would indicate the contrary, or at least a suspicion of criminal activity justifying a stop, we are not bound by legal conclusions drawn by the court below. As recited earlier, we hold that the police had reasonable suspension to believe that criminal activity was extant, the presence of which justified the defendant's restraint and subsequent detection of drugs in "plain view" leading to probable cause to arrest the defendant. To the extent that the court's ruling is at odds with the facts and permissible legal conclusions to be drawn therefrom, we reverse.

Order reversed.

JOHNSON, J., files a dissenting opinion.

JOHNSON, Judge, dissenting:

Because I find no error in the suppression court's determination that the officers lacked probable cause to arrest Emilio Lopez, I must respectfully dissent.

This Court has stated that "an exchange of some unknown items between citizens in a public place, even a place known to be frequented by drug traffickers, does not, without more,

establish probable cause to arrest those citizens." *Common-wealth v. Malson,* 434 Pa.Super. 155, 161, 642 A.2d 520, 523 (1994). In the present case, at the suppression hearing, Officer Fetters testified that he and another officer were "working burglary detail" at 9:30 p.m. on October 30, 1992. He further testified that, while seated in an unmarked vehicle approximately 40 feet away from a man later identified as Aponte, he observed Aponte engage in two suspicious transactions with unidentified males. Subsequently, Officer Fetters observed Lopez reach into the trunk of a car, retrieve a "tied-up" plastic baggie that measured approximately two inches in diameter, cross the street, and hand it to Aponte. He made this observation in the dark, without the use of binoculars. Officer Fetters observed no exchange of currency between Lopez and Aponte. Although Officer Fetters observed an exchange of currency between Aponte and each of the two unidentified males, those exchanges cannot be used to form probable cause as to Lopez. *See Commonwealth v. Kearney,* 411 Pa.Super. 274, 279, 601 A.2d 346, 348 (1992) (although reasonable suspicion existed, officers had no probable cause to arrest appellant without a warrant where appellant was standing next to a person who officers believed was engaged in selling drugs). Further, the officer had no information that Lopez was a known drug dealer, nor was he responding to any citizen complaints concerning drug activity at that location on that date. In addition, Officer Fetters testified that, although he had worked in the area for seven years and made numerous narcotics arrests there, he had never seen Aponte or Lopez prior to this occasion. Moreover, there is no indication in the record that Lopez acted in a suspicious manner or attempted to flee when the officers approached him. Finally, Officer Fetters had no information that the vehicle involved had been used for the distribution of narcotics.

Based upon these facts, the suppression court determined that the officers did not have probable cause to arrest Lopez. Accordingly, the court concluded that the officers' search of the trunk was illegal. *See also In Interest of J.H.,* 424 Pa.Super. 224, 229, 622 A.2d 351, 354 (1993) ("[W]here proba-

ble cause to arrest does not exist, any evidence seized in a search incident to arrest must be suppressed."). Because I find no error in the trial court's conclusion, I would affirm the order that granted Lopez' motion to suppress. *Cf. Commonwealth v. Malson, supra,* at 155, 642 A.2d 520 (no probable cause to arrest where an officer witnessed two men exchange unidentified objects at 9:00 p.m. from a distance of 50 feet away without binoculars); *Commonwealth v. Agnew,* 411 Pa.Super. 63, 600 A.2d 1265 (1991) (no probable cause to arrest where an officer could not identify objects exchanged and had no prior information or reason to believe that appellant would be engaging in a drug transaction).