651 A.2d 1121

**COMMONWEALTH of Pennsylvania, Appellant,**

**v.**

**Tamika ROBINSON.**

Superior Court of Pennsylvania.

Argued Oct. 19, 1994.

Filed Dec. 28, 1994.

Dennis C. McAndrews, Asst. Dist. Atty., Media, for Commonwealth, appellant.

Clinton L. Johnson, Chester, for appellee.

Before CIRILLO, OLSZEWSKI and HESTER, JJ.

HESTER, Judge:

The Commonwealth appeals from the order entered on March 17, 1994, in the Court of Common Pleas of Delaware County in which the trial court suppressed 308 grams of cocaine seized at appellee's residence as the result of the execution of an arrest warrant at 1114 Norris Drive in Chester, Pennsylvania. For the reasons which follow, we reverse and remand for further proceedings.

The facts of the case may be summarized as follows. On June 8, 1993, at approximately 7:30 a.m., detectives from the Delaware County Criminal Investigation Division ("CID") and from the Chester City Police Department attempted to execute an arrest warrant for Keith Robinson at 1114 Norris Drive in Chester, Pennsylvania. CID Detective Joseph Ryan and Chester City Detective Stephen Fox went to the front door of the residence while CID Detective Charles List and Chester Police Officer John Vincenzo went to the rear of the residence. The detectives wore jackets and hats with identifying insignia on them, Detective Ryan's badge was visible outside of his jacket, and Officer Vincenzo was in uniform. Notes of Testimony ("N.T."), 3/15/94, at 6, 17. Detectives Ryan and Fox knocked on the front door which was opened by Sharon Robinson. The detectives identified themselves as police officers and indicated they had a warrant for the arrest

of Keith Robinson. Ms. Robinson stated Keith was her son, but he was not present at that time.[1] *Id.* at 17. Detective Ryan asked if he could look through the house, and Ms. Robinson assented.

At that point, a teenage black male walked down the steps from the second floor, made eye-contact with Detective Ryan, turned, and ran upstairs. Detective Ryan followed, heard a door close on the second floor, and attempted to obtain identification from the young man who was standing adjacent to the closed door. Detective Ryan then heard a window open behind the closed door. Fearing that Keith Robinson was fleeing the premises, Ryan opened the door. Inside he saw appellee, who was dressing in the bathroom. He told her to get dressed and come out and shut the door. Detective Ryan resumed trying to obtain identification from the black male.

Meanwhile, Detective Fox also had started up the stairs but was re-called by Detective List and Officer Vincenzo, who had come to the front door from the rear of the premises. Detective List told Detective Fox that while he was standing outside in the rear of the residence, he had observed a window open on the second floor, and two female hands place a brown paper bag on the exterior ledge of the window, and then close the window. Detective Fox went upstairs, observed a black female, appellee, exit the bathroom, and went into the bathroom and retrieved the bag on the window ledge. Upon feeling the bag's contents, and based upon his twenty-three years of experience, Detective Fox suspected that it contained illegal drugs and opened the bag. The bag later was determined to contain 308 grams of cocaine.

Appellee was charged with possession of a controlled substance, possession with intent to deliver a controlled substance, and possession of drug paraphernalia. She filed a motion to suppress the evidence seized in the brown paper bag, and a hearing on the motion was held on March 15, 1994. On March 17, 1994, the suppression court granted the motion, and this appeal followed.

1. At the suppression hearing, Sharon Robinson testified that Keith Robinson was her nephew. N.T., 3/15/94, at 47.

■ In conformity with the dictates of *Commonwealth v. Dugger*, 506 Pa. 537, 486 A.2d 382 (1985), the Commonwealth has certified that the suppression court's order terminates or substantially handicaps its prosecution of appellee. Accordingly, we conclude that the present appeal is properly before us and address the merits.

■ Our standard for reviewing the suppression of evidence is well established. In *Commonwealth v. Smith*, 396 Pa.Super. 6, 8, 577 A.2d 1387, 1388 (1990), we stated:

Where the Commonwealth is appealing the adverse decision of a suppression court, a reviewing court must consider only the evidence of the defendant's witnesses and so much of the evidence for the prosecution as read in the context of the record as a whole remains uncontradicted. *Commonwealth v. Robinson*, 518 Pa. 156, 159–160, 541 A.2d 1387, 1389 (1988), citing, *Commonwealth v. Hamlin*, 503 Pa. 210, 215–216, 469 A.2d 137, 139 (1983). If the evidence supports the court's factual findings, we are bound by such findings and may only reverse if the legal conclusions drawn therefrom are in error. *Commonwealth v. Jackson*, 359 Pa.Super. 433, 519 A.2d 427 (1986).

The suppression court concluded that police were powerless to seize the brown paper bag appellee concealed outside the window and therefore, suppressed its contents. For the reasons which follow, we are constrained to disagree and reverse.

■ The sole question presented in this case is whether, under all of the circumstances known to police at the time, probable cause existed to seize the brown paper bag.

Probable cause is a flexible, common-sense standard. As the Supreme Court in *Texas v. Brown*, [460 U.S. 730, [741,] 103 S.Ct. 1535, 1543, 75 L.Ed.2d 502 (1983)] commented:

It merely requires that the facts available to the officer would "warrant a man of reasonable caution in the belief," ... that certain items may be contraband or stolen property or useful as evidence of a crime; it does not demand any showing that such a belief be correct or more likely true than false. A "practical, non-technical" proba-

bility that incriminating evidence is involved is all that is required.

*Commonwealth v. Kendrick,* 340 Pa.Super. 563, 570–71, 490 A.2d 923, 927 (1985) (citations omitted).

Sharon Robinson had provided lawful consent to the officers to look through her house. N.T., 3/15/94, at 29, 47. The circumstances known to police at the time are as follows: Police did not have a photograph of Keith Robinson and knew of no identifying characteristics. They knew only that Keith Robinson was a black male and that he was to be arrested for selling cocaine. *Id.* at 28. When the teenage black male fled up the stairs upon seeing police, police had no idea whether he was Keith Robinson. Upon hearing the bathroom window open behind the closed door, police were unaware whether Keith Robinson was inside, trying to flee the premises. Thus, they were permitted lawfully to open the bathroom door to search for Keith. At that point, the officers in the house learned that the occupant of the bathroom, who appeared to be female, had secreted a paper bag outside of the house on the window ledge. Thus, police were confronted by two options: one, ignore the bag and do nothing, thereby creating a risk that contraband or a weapon would go undetected, or two, retrieve the bag, feel its contents, and if further inquiry was justified, open the bag to view its contents. Based upon the circumstances, we conclude that police reasonably were justified in picking up the bag and feeling it.

Detective Fox described his thought process at the time he observed the bag on the ledge.

I went to the window, opened up the window. I observed the brown bag on the window—just outside the window on the sill. I reached for it and picked it up and felt that it was fairly heavy in weight. And in touching it I could feel like a firm substance inside. It wasn't really hard like a metal object or a brick or a rock of some type, but it was firm and kind of crumbly. It was my opinion at that time that it was narcotics inside.

*Id.* at 32–33. The defense previously had stipulated to Detective Fox's expertise in the area of narcotics investigation. *Id.* at 26. Moreover, it is firmly established in federal and Pennsylvania law that an officer's sense of touch can, as here, provide the facts necessary to establish probable cause. *Minnesota v. Dickerson,* —— U.S. ——, 113 S.Ct. 2130, 124 L.Ed.2d 334 (1993); *Commonwealth v. Johnson,* 429 Pa.Super. 158, 631 A.2d 1335 (1993). Once Detective Fox was able to feel the contents of the brown bag and determine, through his extensive experience, that it likely contained narcotics, he was justified in effectuating a full seizure of the bag and in examining its contents.[2]

■ In his treatise on the Fourth Amendment, Professor Wayne LaFave discusses the experience and expertise of an officer in the determination of probable cause. LaFave emphasizes, through reference to *United States v. Ortiz,* 422 U.S. 891, 95 S.Ct. 2585, 45 L.Ed.2d 623 (1975), *People v. Symmonds,* 18 Ill.App.3d 587, 310 N.E.2d 208 (1974), and *United States v. Davis,* 458 F.2d 819 (D.C.Cir.1972):

> [W]hat constitutes "probable cause" for searches and seizures must be determined from the standpoint of the officer, with his skills and knowledge, rather than from the standpoint of an average citizen under similar circumstances. That is, probable cause "is to be viewed from the vantage point of a prudent, reasonable, cautious police officer.... guided by his experience and training." The Supreme Court has made it clear that the expertise and experience of the officer are to be taken into account in applying the Fourth Amendment probable cause test. This is as it should be, for there "would be little merit in securing able, trained men to guard the public peace" if their actions were to be "measured by what might be probable cause to an untrained civilian".

W. LaFave, *Search and Seizure: A Treatise on the Fourth Amendment,* 570–71 (2d ed. 1987). Pennsylvania law, like-

---

**2.** We do not characterize Detective Fox's actions as "feeling around for contraband" as suggested by the dissent. *See* Dissenting Opinion at 1127.

wise, focuses upon the experience of police officers in determining the existence of probable cause.

> [P]robable cause exists if the facts and circumstances within the knowledge of the police officer at the time of the arrest are sufficient to justify a person of reasonable caution in believing the suspect has committed or is committing a crime. In determining whether probable cause existed in a particular situation a court will look not just at one or two individual factors, but will consider the "totality of the circumstances" as they appeared to the arresting officer:

>> When we examine a particular situation to determine if probable cause exists, we consider all the factors and their total effect, and do not concentrate on each individual element. *We also focus on the circumstances as seen through the eyes of the trained officer, and do not view the situation as an average citizen might.* Finally, we must remember that in dealing with questions of probable cause, we are not dealing with certainties. We are dealing with the factual and practical considerations of everyday life on which reasonable and prudent persons act.

*Commonwealth v. Burnside,* 425 Pa.Super. 425, 430, 625 A.2d 678, 681 (1993) (emphasis in original), quoting *Commonwealth v. Quiles,* 422 Pa.Super. 153, 167, 619 A.2d 291, 298 (1993) (en banc).

Thus, we conclude that under all of the circumstances of this case, police herein had an obligation to further investigate the bag secreted outside of the bathroom window. It is abundantly clear that Detective Fox possessed at the very least, articulable suspicion that the bag contained contraband.[3]

**3.** The dissent argues that police were obligated to detain the occupants of the house and seek a search warrant in order to examine the contents of the paper bag. We believe that the police acted reasonably under the totality of circumstances present in this case. As acknowledged by the dissent, *See* Dissenting Opinion at 1127 n. 2, the issue concerning the lack of a search warrant for the paper bag was not raised or discussed by either the Commonwealth or the appellee on appeal to this court. Moreover, the defendant's position at the suppression hearing focused solely upon whether the police had probable cause to seize the bag. *See* defense counsel's summation, N.T., 3/15/94, at 66

The within fact situation, while occurring in a different setting, is quite similar to *Commonwealth v. Morris*, 422 Pa.Super. 343, 619 A.2d 709 (1992). In *Morris*, the defendant was stopped for a motor vehicle violation. As the police officer approached, he observed Morris attempting to hide a brown paper bag under the seat. The officer seized the bag, opened it, and determined that it contained cocaine. While *Morris* involved the interpretation and applicability of *Terry v. Ohio*, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968), our reasoning in *Morris* is applicable to the facts herein. In determining that police acted reasonably in *Morris*, once they saw the defendant attempt to secrete the brown paper bag under the seat, this court stated, "The officer's observation of Morris's actions created more than a mere guess; his observations supported a genuine belief that his safety was in jeopardy and, at the very least, articulable suspicion that the bag contained contraband ..." *Commonwealth v. Morris, supra*, 422 Pa.Super. at 350, 619 A.2d at 712–13.

In the instant case, once reasonable suspicion existed, Detective Fox was justified in assuming control of the bag. *Id.; United States v. Place*, 462 U.S. 696, 702, 103 S.Ct. 2637, 2642, 77 L.Ed.2d 110 (1983) ("[W]here the authorities possess specific and articulable facts warranting a reasonable belief that a traveler's luggage contains narcotics, the governmental interest in seizing the luggage briefly to pursue further investigation is substantial"); *Commonwealth v. Davidson*, 389 Pa.Super. 166, 566 A.2d 897 (1989) (police justified in opening purse of companion arrested for drug offenses where woman appeared concerned about purse's contents).

As we stated in *Commonwealth v. Mallory*, 418 Pa.Super. 614, 623, 614 A.2d 1174, 1179 (1992) (citation omitted):

It is the "probability" of criminal activity and not its "certainty" which is the measuring rod against which the totality of the circumstances confronting the police are to be weighed in determining the presence of probable cause....

("It was a warrantless search, without a warrant, and without sufficient probable cause to conduct the search").

We find that the facts, when viewed in toto, painted a "picture of probable cause" . . . To do otherwise would be to take a myopic view of the facts and render a decision totally devoid of common sensical inferences to be drawn by trained police officers with regard to drug activity.

Order reversed and case remanded for further proceedings. Jurisdiction relinquished.

OLSZEWSKI, J., files a dissenting opinion.

OLSZEWSKI, Judge, dissenting.

I agree with the majority's insightful analysis and conclusion that the police did in fact have probable cause to believe that the brown paper bag contained drugs. I must, however, disagree with the majority's statement that this is the sole question presented on appeal. The next question which we must logically address is what should the police have done next: searched the bag immediately, as they did, or first procured a warrant and then searched the bag?

Since the suppression court concluded that the police lacked probable cause to search the bag, it never reached this purely legal question. Now that we have decided that there was probable cause, we must determine what the officers' next step should have been. The bag was in a house, the police had no search warrant or consent, and there were no exigent circumstances.[1] Could the police immediately open the bag and examine its contents? The answer is clearly no.

A home and its contents are surrounded by the highest expectation of privacy our law recognizes. *Payton v. New York*, 445 U.S. 573, 589–590, 100 S.Ct. 1371, 1381–1382, 63 L.Ed.2d 639 (1980) (discussing the sanctity of the home); *Commonwealth v. Edmunds*, 526 Pa. 374, 395–97, 586 A.2d 887, 898–899 (1991) (Pennsylvania Constitution accords even

---

1. The police had an arrest warrant for Keith Robinson, but as defense counsel established at the hearing, the police could not expect to find Mr. Robinson inside the paper bag. N.T. 3/15/94 at 39. The suppression court specifically found that Ms. Robinson had given the police consent only to search for Keith Robinson, and not to search her house generally. Opinion, 4/5/94 at 1.

greater weight to privacy interests than federal constitution). This expectation acts as a sort of force field which the police cannot penetrate without a warrant, or a proper exception to the warrant requirement. *Payton, supra; see also Commonwealth v. Roland,* 535 Pa. 595, 597, 637 A.2d 269, 270 (1994). While probable cause alone might suffice in an automobile search, *see, e.g., Commonwealth v. Morris, supra* 422 Pa.Super. at 343, 619 A.2d 709, the police needed a warrant to see what Tamika Robinson kept in closed containers in her Chester home.

The majority correctly notes that when the police have an articulable suspicion that something contains drugs, they may be justified in briefly seizing it while they investigate further or obtain a warrant. *United States v. Place, supra* 462 U.S. 696, 103 S.Ct. 2637 (police properly detained passenger and luggage based on articulable suspicion that the passenger was carrying drugs). But detaining the bag is one thing; searching it is another.

Here, the Commonwealth could have detained Tamika Robinson and the bag while one of them went to a magistrate to obtain a warrant. If a neutral and detached magistrate agreed that the incriminating circumstances surrounding the discovery of the bag constituted probable cause, then the magistrate would issue a warrant and the police could properly open the bag and examine it. If the magistrate disagreed, then the police would have to respect Ms. Robinson's privacy rights. While the trip to a magistrate may be annoying, especially when the police feel certain about what they will discover, it is still required by the Fourth Amendment and by Article I, Section 8 of the Pennsylvania Constitution.

The record shows that the Commonwealth realized this problem at the suppression hearing, and argued that getting a warrant first was unreasonable under the circumstances because by looking in the bag, the officer would only be "confirming what he already knows." N.T. 3/15/94 at 63.[2] Of course, the officer did not know for certain that the bag

2. The Commonwealth does not address the warrant problem in its brief, focusing all its energy on the probable cause issue. Sadly, Ms. Robinson's brief is equally silent on the warrantless aspect of this search.

contained drugs—he only had a strong and well-supported suspicion which we have held constituted probable cause. The Commonwealth should remember that the further step of confirming this suspicion with a magistrate is not unreasonable, but a constitutional mandate. Rather, it is searching a home without a warrant which is presumptively unreasonable. *Roland, supra.*

I would also note that the "plain feel" doctrine has no application in this case. Plain feel has recently emerged as an analogy to the plain view doctrine, under which police may seize contraband in plain view from a lawful vantage point without first procuring a warrant. *Minnesota v. Dickerson, supra,* —— U.S. at ——, 113 S.Ct. at 2136, 124 L.Ed.2d at 345. If any further search is needed to confirm the object's incriminating character, plain view will not apply. *Id.* (citing *Arizona v. Hicks,* 480 U.S. 321, 107 S.Ct. 1149, 94 L.Ed.2d 347 (1987) (moving a stereo to look at its serial number was a search, and precluded application of the plain view doctrine)). To deliberately pick something up and feel it is every bit as much of a search as moving an object to get a better view.[3]

Moreover, just as plain view requires the police to lawfully be in a position to view the object, plain feel requires the same lawful access. *Minnesota v. Dickerson, supra* at ——, 113 S.Ct. at 2137, 124 L.Ed.2d at 346. This is why the only plain feel cases we have seen, and are likely ever to see, have stemmed from *Terry* stop-and-frisk situations. *Id.; accord, Commonwealth v. Johnson, supra* 429 Pa.Super. 158, 631 A.2d 1335. Even if they are lawfully in a home, the police may not go feeling around for contraband any more than they may look for it in closed containers, drawers and cabinets; that is, not without a warrant or a proper warrant exception.

In sum, although I agree with the majority that the police had probable cause to search the bag, I would also hold that their failure to procure a warrant before searching it rendered

---

**3.** The majority states that the feel of the bag helped establish probable cause. I would hold that probable cause was sufficiently established before Detective Fox felt the bag's contents.

the search illegal. I would therefore affirm the lower court's suppression order.