614 A.2d 1174

**COMMONWEALTH of Pennsylvania, Appellant,**

v.

**Robert MALLORY, Appellee.**

Superior Court of Pennsylvania.

Argued July 14, 1992.

Filed Sept. 16, 1992.

Karen L. Grigsby, Asst. Dist. Atty., Philadelphia, for Com., appellant.

Sarah Kerr, Asst. Public Defender, Philadelphia, for appellee.

Before CIRILLO, POPOVICH and HOFFMAN, JJ.

POPOVICH, Judge.

The Commonwealth appeals the grant of a motion to suppress by the appellee, Robert Mallory.[1]  We reverse.

The facts of record are undisputed and indicate that at approximately 1:45 p.m., on the 3rd day of March, 1989, plainclothes officers under the direction of Lieutenant Samuel Lynch of the Philadelphia Police Department established a surveillance in the vicinity of 1308 East Price Street, Philadelphia.  This action was taken because of numerous accounts received by the police that drug activity was taking place in the 1300 block of East Price Street.

After fifteen minutes at the site, the surveillance squad reported that there was a narcotics transaction occurring in front of the bar at Price and Crittenden.  As a consequence, a "couple of buyers" were arrested there.  Within another fifteen minutes to a half-an-hour, the police received a description of the dealer standing at Price and Crittenden in front of the bar.  The police decided to make his arrest.

As Lt. Lynch was driving to the scene, he observed the appellee at a distance of 10–15 feet from the officer and 5–10 feet from the dealer the police intended to arrest, and "[h]e wasn't just standing there, he was inching his way around to the other side of the bar."  This action was preceded by the arrival of 2 plainclothes officers and Lt. Lynch, who came onto the scene with "maybe three or four other uniformed cars in the area."

As the police approached to make an arrest of the dealer, Lt. Lynch observed the appellee reach into his jacket pocket, remove a clear plastic bag and "shove" it down the front of his pants, near the waistband area.  Lt. Lynch, thereafter, arrested the appellee, and a search of his person produced a clear

1.  The Commonwealth certifies that the grant of the motion to suppress will "substantially" handicap its prosecution of the appellee.  This renders the interlocutory appeal properly before us.  See *Commonwealth v. Dugger*, 506 Pa. 537, 486 A.2d 382, 385 n. 5 (1985).

plastic bag containing 24 orange caps later found to hold crack-cocaine.

After his arrest, the appellee was transported to the police station for processing. A further search of his jacket produced 9 clear plastic packets, each containing a white powdery substance believed to be cocaine. The criminal complaint filed against the appellee charged him with unlawful possession of cocaine.

Following a suppression hearing, the court granted the appellee's motion on the ground that, albeit it found Lt. Lynch to be "absolutely credible", the evidence was not supportive of a finding of probable cause to arrest the appellee prior to the search of his person. The Commonwealth perfected an appeal and assails the court's findings of fact and conclusions of law of insufficient evidence to justify the arrest and subsequent search of the appellee.

It is axiomatic that the validity of a warrantless arrest is determined by considering "whether, at the moment the arrest was made, the officer had probable cause to make it," *Beck v. Ohio*, 379 U.S. 89, 91, 85 S.Ct. 223, 225, 13 L.Ed.2d 142 (1964), and the person arrested is believed to be the guilty party. See *Commonwealth v. Walker*, 348 Pa.Super. 207, 501 A.2d 1143 (1985), allocatur denied; *Commonwealth v. Pytak*, 278 Pa.Super. 476, 420 A.2d 640, 644 (1980). It is only the probability of criminal activity that is the standard of probable cause. This means less than the evidence which would justify conviction, or even a *prima facie* showing of criminal activity; but more than a mere suspicion. See *Commonwealth v. Murray*, 437 Pa. 326, 263 A.2d 886 (1970). Specifically, we have stated:

Probable cause is a flexible, common-sense standard. As the Supreme Court in *Texas v. Brown*, supra [460 U.S. 730, 103 S.Ct. 1535, 75 L.Ed.2d 502 (1983) ] commented [460 U.S. at 741] 103 S.Ct. at 1543:

It merely requires that the facts available to the officer would "warrant a man of reasonable caution in the belief," *Carroll v. United States*, 267 U.S. 132, 162, 45 S.Ct. 280, 288 [69 L.Ed. 543] (1925), that certain items may be

contraband or stolen property or useful as evidence of a crime; it does not demand any showing that such a belief be correct or more likely true than false. A "practical, non-technical" probability that incriminating evidence is involved is all that is required. *Brinegar v. United States*, 338 U.S. 160, 176, 69 S.Ct. 1302, 1311 [93 L.Ed. 1879] (1949).

Moreover, when examining a particular situation to determine if probable cause exists, a court must consider all factors and not concentrate on any individual element. Furthermore, it is important to focus on the circumstances as seen through the eyes of a trained officer and not to view the situation as an average citizen might. Finally, probable cause does not deal in certainties; rather, a court is faced with the factual and practical consideration of everyday life which affect how reasonable and prudent men act. See *Commonwealth v. Trenge*, 305 Pa.Super. 386, 451 A.2d 701, 705 (1982); *Commonwealth v. Tolbert*, 235 Pa.Super. 227, 230, 341 A.2d 198, 200 (1975).

*Commonwealth v. Kendrick*, 340 Pa.Super. 563, 490 A.2d 923, 927 (1985). Accord *United States v. Lima*, 819 F.2d 687, 688 (7th Cir.1987). Viewed in light of the preceding, the evidence presents a picture at odds with the suppression court's ruling; to-wit:

1) There were numerous reports to the police of narcotics activity in the 1300 block of East Price Street;

2) Surveillance of the area by police produced a narcotics transaction in front of a bar at Price & Crittenden which led to the arrest of a couple (2, 3) of "small buyers";

3) Within 15 minutes of the first arrests, the "dealer" was identified at the same location;

4) As police were approaching the "dealer" to make his arrest, Lt. Lynch noticed the appellee at a distance of approximately 5–10 feet from the dealer, and he was not stationary "he was inching his way around to the other side of the bar" building; and

5) Appellee made a "motion" which caught Lt. Lynch's attention: he reached into his right jacket pocket, took out a clear plastic baggie and "shoved" it in the waist band area of his slacks.

Lt. Lynch reacted by arresting the appellee.

At the suppression hearing, Lt. Lynch was asked what he *thought* was in the plastic bag when first he saw it in the appellee's possession. His response was, "Drugs", and it was premised upon:

1) Fifteen years on the police force;

2) Observing "[w]ell over a hundred, two hundred" instances of "narcotics in plastic bags" [2] during his tenure as a police officer;

3) The area in which the surveillance was conducted had been "worked" by Lt. Lynch in the past, and, in particular, the bar in front of which the appellee first was seen was known to have "a lot of drug activity on that particular corner"; and

4) Lt. Lynch had participated in approximately fifteen narcotic investigations on that corner, some of which "involve[d] narcotics in plastic bags[.]

The issue is a close one, but we believe that the totality of the circumstances point to sufficient probable cause to link the clear plastic baggie with criminal activity. Cf. *United States v. Cruz*, 910 F.2d 1072, 1077 (3rd Cir.1990), cert. denied, —— U.S. ——, 111 S.Ct. 709, 112 L.Ed.2d 698 (1991) (Defendant's movement toward a particular store, his flight after approach of police and officer's knowledge of drug trafficking in the area gave police probable cause to arrest the defendant). We find that this experienced police officer's view of the baggie was tantamount to a view of the cocaine itself. See *Kendrick*, supra.

More specifically, in *Kendrick*, a panel majority of this Court upheld the seizure of a black plastic film vial containing 27 foil packets of heroin. It appears that in *Kendrick*, as

---

**2.** This was corroborated by Officer Robert Fagan, who testified that he saw cocaine packaged in baggies approximately: "Two hundred [times], maybe more."

police were executing a warrant to search for drugs in a residence, the authorities approached the defendant to conduct a weapon search. Before doing so, however, the police noticed something black in the defendant's left hand. He attempted to conceal the object by tucking his hand under his body. Nonetheless, the vial was seized and found to contain heroin. The defendant was arrested, but his motion to suppress was granted and appealed by the Commonwealth. We reversed. As is herein relevant, we wrote:

In the instant case, evidence at the suppression hearing revealed a valid search warrant authorizing a narcotics search of the residence. When the detectives attempted to *execute the warrant, they were immediately confronted by a gunman. Under these circumstances, it was not unreasonable for the detectives to conclude either that criminal activity was currently taking place,* or had taken place just prior to their arrival. Focusing now on appellee, the evidence showed that appellee was present in a house in which the detectives suspected drug trafficking activities. Moreover, when the detectives arrived at the residence to execute the warrant, appellee attempted to avoid police detection by retreating into a bedroom. Failing to avoid detection and *once under police custody, appellee then attempted to hide the film vial under his body.* In light of the foregoing, we do not hesitate in finding that there was probable cause to associate the concealed object with criminal activity. See *Commonwealth v. Chamberlain,* supra [332 Pa.Super. 108, 480 A.2d 1209 (1984) ]; *Texas v. Brown,* supra; *Commonwealth v. Gease,* 304 Pa.Super. 433, 450 A.2d 989 (1982). We hold, therefore, that the seizure was lawful.[6]

\*　　\*　　\*　　\*　　\*　　\*

This Court believes that a film vial, a common package for carrying narcotics, is more closely akin to those rare single purpose containers which "by their very nature cannot support any reasonable expectation of privacy because their contents can be inferred from their outward appearance." *Arkansas v. Sanders,* 442 U.S. 753, 764–765 n. 13, 99 S.Ct.

2586, 2593–2594 n. 13, 61 L.Ed.2d 235 (1979). Admittedly, a film container has other uses and therefore is not purely a "single-purpose" container. However, given the circumstances of this case, *we believe that the trained narcotics detective's view of the container was tantamount to a view of the heroin itself.* See *Texas v. Brown,* supra (Stevens, J., concurring [460 U.S. at 748, 103 S.Ct.] at 1547). Therefore, we hold that the search of the film vial was lawful.

---

[6] See *U.S. v. Jackson,* 649 F.2d 967, [978] (3rd Cir.1981) cert. denied *Bailey v. U.S.,* 454 U.S. 871, 102 S.Ct. 341, 70 L.Ed.2d 176 [(1981)]. (Police who entered bar with a search warrant for the bar and arrest warrants for five persons on drug related charges, *had probable cause to arrest and search defendant,* who was not named in either the arrest or search warrant, *when they observed defendant attempt to hide capsules of the type commonly containing heroin in a freezer*); *Commonwealth v. Moore,* 300 Pa.Super. 488, 446 A.2d 960 (1982) (officers observed appellant and companion emerge from an alley in *a high crime area* at night, leaf through an object, and run at first sight of police. These facts plus permissible inferences from them would lead a man of reasonable caution to suspect criminal activity was afoot.)

Cf. *Ybarra v. Illinois,* 444 U.S. 85, 100 S.Ct. 338, 62 L.Ed.2d 238 (1979) (not only was probable cause to search Ybarra absent at the time the warrant was issued, it was still absent when the police executed the warrant. Ybarra made *no gestures indicative of criminal conduct, made no movements that might suggest an attempt to conceal contraband and said nothing of a suspicious nature to the police officers*); *Commonwealth v. Kelly,* 487 Pa. 174, 409 A.2d 21 (1979) (when officers had neither been informed of nor *observed suspicious conduct or circumstances that would give rise to an inference of possession of a controlled substance, they lacked probable cause to seize from plain view amber prescription vial which contained several foil packets of hashish.)*

340 Pa.Super. at 572 & n. 6, 490 A.2d at 928–29, & n. 6 (Emphasis added).

Accord *United States v. Embry,* 546 F.2d 552, 556 (3rd Cir.1976), cert. denied, 430 U.S. 948, 97 S.Ct. 1587, 51 L.Ed.2d 797 (1977) (Defendant's flight, while triggered by the street frisk of another person standing in close proximity to him, was not enough to afford sufficient probable cause to justify his apprehension; defendant's flight *in conjunction with action of discarding a package recognized as one in which narcotics are frequently transported—rolled shape ball of aluminum foil—satisfied the probable cause requirement for the defendant's arrest*); *United States v. Martin,* 386 F.2d 213, 215

(3rd Cir.1967), cert. denied, 393 U.S. 862, 89 S.Ct. 142, 21 L.Ed.2d 130 (1968) (Defendant's detention and search was supported by the nature of the items abandoned and provocative acts—packets discarded, retrieved by police and identified by federal narcotics officer as "junk"); cf. *Commonwealth v. Bulling,* 331 Pa.Super. 84, 480 A.2d 254 (1984) (Defendant arrested after police observed him receive 2 credit cards for a small plastic packet found to contain heroin).

As in *Kendrick,* supra, it was proper here for the police to conclude that criminal activity was afoot. With regard to the appellee, he was standing on a corner known for drug activity and within 5–10 feet of a "dealer" who was about to be arrested. Once the police began arriving on the scene, the appellee attempted to avoid police scrutiny by "inching" his way to the opposite side of the bar building. In addition, in an effort to insulate his drugs from detection, the appellee shifted their location from his jacket pocket to the inside of his slacks.

In *United States v. Aquiar,* 825 F.2d 39 (4th Cir.1987), cert. denied, 484 U.S. 987, 108 S.Ct. 505, 98 L.Ed.2d 503 (1987), the Fourth Circuit Court of Appeals held that airport police had probable cause to arrest and search the defendant premised upon his meeting a number of drug courier profile characteristics and the officer's observance of a large bulge on the defendant's left ankle and some white plastic showing beneath the cuff of his left trouser. As to the latter fact, the Court noted that it joined with the drug courier profile to validate the defendant's arrest. The remarks made by the Court are germane at bar:

> ... the fact that he met a number of drug courier profile characteristics did not supply probable cause to arrest him. * * * but there was more here than the fact that Aquiar met a number of well-known drug courier profile characteristics. *There was the large bulge at the left ankle and the piece of white plastic that could be observed when Aquiar walked coupled with the testimony that [the police] observed others with such bulges and that the bulge had always turned out to be packets of illicit drugs.* Nor can the observed bulge and white plastic be dismissed as just anoth-

er drug courier profile characteristic. For a variety of reasons, many innocent persons would exhibit some or even many of those characteristics, *but few innocent people carry treasures in packets wrapped in plastic and strapped to their ankles.* A United States Navy enlisted man in uniform without pockets may carry a package of cigarettes in his socks, but Aquiar was not in any such uniform. *If other innocent people carry precious possessions in packets strapped to their ankles, they must be extremely rare.*

The fact that Aquiar met a number of drug courier profile characteristics—he . . . traveled on a flight from Miami, a fertile source of narcotics, on a one-way ticket issued in a false name and paid for in cash and that there were no baggage claim checks—alone was not enough to constitute probable cause for arrest. Whether or not the policeman's observance of the bulge at the ankle alone was enough to constitute probable cause for arrest, we need not decide, but in combination with the drug courier profile characteristics exhibited by Aquiar, it would constitute probable cause for arrest. Out of the policeman's experience, he recognized that the bulge was probably caused by a packet of illicit drugs strapped to the ankle. *What the policeman knew and observed therefore was far more than the fact that Aquiar met the generalized drug courier profile characteristics.*

825 F.2d at 41 (Emphasis added). Accord *United States v. Tate,* 745 F.Supp. 352, 360–61 (W.D.N.C.1990).

As in *Aquiar,* supra, the police here observed an object on the defendant's person in a location which was uncharacteristic of a storage site. Moreover, what was seen had been witnessed by the police in the past and it turned out to be narcotics. This knowledge cannot merely be ignored and dismissed as so much fluff that adds little to the detection of criminal activity. Experience is the best tool to assist law enforcement officers in being attuned to the ever-changing drug world, which takes on many forms and presents many faces to cloak its unlawful activity. The police, being students of the world of crime, cannot nor should not ignore what they

have learned from previous encounters with drug users and dealers. To do so would render knowledge and experience acquired while "on the job" of no consequence in combating the ubiquitous drug user/dealer who appears to have infiltrated every facet of today's world.

Accordingly, as stated in *Kendrick*, supra, and implied in *Aquiar*, supra, we do not hesitate in finding that there was probable cause to associate the concealed object with criminal activity, and we believe that the veteran officer (being involved with more than a hundred criminal instances of "narcotics in plastic bags") was justified in thinking that the object he saw contained drugs. It is the "probability" of criminal activity and not its "certainty" which is the measuring rod against which the totality of the circumstances confronting the police are to be weighed in determining the presence of probable cause to arrest. *Commonwealth v. Fiore*, 281 Pa.Super. 1, 421 A.2d 1116 (1980).

We find that the facts, when viewed in toto, painted a "picture of probable cause" allowing the police to arrest the appellee. To do otherwise would be to take a myopic view of the facts and render a decision totally devoid of common sensical inferences to be drawn by trained police officers with regard to drug activity. We hold that the actions of the police, under the totality of the circumstances, was proper and not violative of either the Pennsylvania or United States Constitutions (Art. 1, Sec. 8; Fourth Amendment, respectively).

Alternatively, it could be argued that the appellee's actions in concealing his drugs transpired in "plain view" of the police and, when coupled with the appellee's "furtive" efforts to accomplish his concealment, provided the probable cause to arrest. See Dissenting Opinion by Popovich, J. in *Kendrick*, supra, citing *Commonwealth v. Gease*, 304 Pa.Super. 433, 450 A.2d 989 (1982).

Because we find that the seizure of the clear plastic baggie and search of its contents were lawful, the suppression court

erred in granting the appellee's motion to suppress. Consequently, we reverse the order of the court below.

·Order ·reversed.