625 A.2d 678

**COMMONWEALTH of Pennsylvania, Appellant**

v.

**Nathaniel BURNSIDE.**

Superior Court of Pennsylvania.

Argued March 30, 1993.

Filed May 20, 1993.

426

Michael Erlich, Asst. Dist. Atty., Philadelphia, for Com., appellant.

Carol S. Weinman, Philadelphia, for appellee.

Before TAMILIA, POPOVICH and CERCONE, JJ.

CERCONE, Judge.

This is an interlocutory appeal as of right from an order suppressing contraband seized from appellee, Nathaniel Burnside, at the time of his arrest. The appeal is properly before this court because the Commonwealth has certified that suppression of the physical evidence substantially handicaps the prosecution of this case. *See* Pa.R.A.P., Rule 311(d), 42 Pa.C.S. (Commonwealth Appeals as of Right in Criminal Cases). For the reasons set forth below, we reverse.

On January 11, 1992, at approximately 10:15 p.m., a uniformed Philadelphia police officer observed appellee, who was standing in the brightly lit doorway to a store, and holding a handful of "small, blue plastic packets" of the type the experienced officer knew commonly contained cocaine packaged for the retail market. This sighting occurred in an area in which the police officer had conducted numerous arrests for drug offenses. Based on his knowledge and experience, the officer concluded that appellee's packets probably contained narcotics. The officer and his partner, both in uniform, decided to

investigate the situation further. However, as soon as appellee noticed the police presence, he shoved the packets into his jacket and stepped backward into the store. *See* N.T. 7/21/92 at 5–10, 14–17, 19–25.

Police Officer Norman followed appellee into the store and brought him outside. Officer Albert Jones thereupon conducted a pat down search of appellee which disclosed sixty-nine (69) blue-tinted packets and two (2) clear plastic packets, all containing a "white powdery substance" which later proved to be cocaine. At that time, appellee also possessed one hundred twenty-one dollars ($121) in United States currency. *Id.* at 11–12, 25–27. Appellee was subsequently charged with knowingly possessing a controlled substance and possession of a controlled substance with intent to deliver. The prosecution properly notified appellee that, under 18 Pa.C.S. § 7508(a)(3)(i), he would be subject to a mandatory minimum term of imprisonment for trafficking in a quantity of cocaine in excess of two grams. *See* Notice of Drug Mandatory Minimum Sentence filed 3/13/92 (docket entry D–1).

On July 21, 1992, a hearing was conducted before the Honorable Steven R. Geroff on appellee's motion to suppress physical evidence. Although appellee presented no witnesses, Police Officer Jones testified on behalf of the Commonwealth. The suppression court ultimately concluded that the police officers had no probable cause to arrest appellee, and that there were no surrounding circumstances to justify a *Terry* stop. *See* trial court opinion at 3–5.

After the lower court entered the suppression order, the Commonwealth, appellant in this case, perfected an appeal to this court. Appellant has raised the following issues for our review:

I.    The lower court erred by concluding that [the] police lacked probable cause to arrest where an officer observed [appellee] displaying blue plastic packets, used for storing and selling cocaine, in an area where the officer had conducted numerous arrests for narcotics offenses, and where, immediately upon sighting the

officer, [appellee] concealed the packets and walked away.

II. The lower court erred by concluding that [the] police lacked even reasonable suspicion to stop [appellee] where an officer observed [appellee] displaying blue plastic packets used for storing and selling cocaine in an area where the officer had conducted numerous arrests for narcotics offenses, and *immediately upon sighting the officer, [appellee] concealed the packets and walked away.*

Before considering these claims, we must first set forth the proper standard which governs review of a suppression order.

■■■ Without question, it is the province of the suppression court to make findings of fact and conclusions of law as to whether evidence was obtained in violation of an accused's constitutional rights. *Commonwealth v. Tuck,* 322 Pa.Super. 328, 332, 469 A.2d 644, 646 (1983). An appellate court must first ascertain whether the record supports the factual findings of the suppression court, and then determine the reasonableness of the inferences and legal conclusions drawn therefrom. *Commonwealth v. Oglialoro,* 377 Pa.Super. 317, 318, 547 A.2d 387, 387 (1988) *aff'd,* 525 Pa. 250, 579 A.2d 1288 (1990). In reviewing an appeal taken by the Commonwealth from a suppression order,

we must consider only the evidence of the defendant's witnesses and so much of the Commonwealth evidence that, read in the context of the record as a whole, remains uncontradicted. Furthermore, our scope of appellate review is limited primarily to questions of law. We are bound by the suppression court's findings of fact if those findings are supported by the record. Factual findings wholly lacking in evidence, however, may be rejected.

*Commonwealth v. Bennett,* 412 Pa.Super. 603, 606, 604 A.2d 276, 277 (1992) (citations omitted).

■■■ The Commonwealth initially contends that the police had probable cause to effectuate a warrantless arrest based on the officers' observation of appellant and his conduct. Under Pennsylvania law,

[p]robable cause exists if the facts and circumstances within the knowledge of the police officer at the time of the arrest are sufficient to justify a person of reasonable caution in believing the suspect has committed or is committing a crime. In determining whether probable cause existed in a particular situation a court will look not just at one or two individual factors, but will consider the "totality of the circumstances" as they appeared to the arresting officer:

> When we examine a particular situation to determine if probable cause exists, we consider all the factors and their total effect, and do not concentrate on each individual element. *We also focus on the circumstances as seen through the eyes of the trained officer, and. do not view the situation as an average citizen might.* Finally, we must remember that in dealing with questions of probable cause, we are not dealing with certainties. We are dealing with the factual and practical considerations of everyday life on which reasonable and prudent [persons] act.

*Commonwealth v. Simmons,* 295 Pa.Super. 72, 83, 440 A.2d 1228, 1234 (1982).... It is only the probability, and not a *prima facie* showing of criminal activity that is the standard of probable cause for a warrantless arrest. *Probable cause exists when criminality is one reasonable inference; it need not be the only, or even the most likely inference.* As Courts of this Commonwealth have repeatedly emphasized, determinations of probable cause must be based on common-sense non-technical analysis.

*Commonwealth v. Quiles,* 422 Pa.Super. 153, 167, 619 A.2d 291, 298 (1993) (*en banc*) (quoting *Commonwealth v. Simmons* quoting *Commonwealth v. Kazior,* 269 Pa.Super. 518, 522, 410 A.2d 822, 824 (1979) (other citations omitted, emphasis added)).

▮ As this court recently recognized, while a particular type of container may have lawful purposes, the circumstances under which a trained narcotics detective views its use may be tantamount to a view of actual contraband. *Commonwealth v. Mallory,* 418 Pa.Super. 614, 618, 614 A.2d 1174, 1177 (1992), *allocatur denied,* — Pa. ——, 621 A.2d 578 (1993). The

uncontradicted evidence presented by the Commonwealth in the instant case shows that Officer Jones was on patrol in an area with which he was closely acquainted and which he knew to be the scene of prior drug transactions. Officer Jones had been assigned to that locale for over five years and had personally effectuated between thirty and forty arrests for drug trafficking. From a distance of only ten feet, this experienced officer observed appellee holding a handful of the exact type of packets used by local narcotics dealers when selling cocaine.[1] The officer's suspicions as to the probable contents of the packets displayed by appellee were bolstered when appellee immediately concealed the packets and vacated his street location upon sighting the police patrol car. Officer Jones concluded that appellee's display of what appeared to be retail packages of a narcotic coupled with appellee's furtive movements supported the conclusion that appellee was in possession of contraband in violation of Pennsylvania's drug laws. *See* N.T. 7/21/92 at 5–25.

As in *Mallory, supra,* we find that the sum of these facts "painted a picture of probable cause" allowing the police to arrest the appellee. *See id.* 418 Pa.Super. at 623, 614 A.2d at 1179. To rule otherwise would be to take a "myopic view of the facts and render a decision totally devoid of commonsensical inferences to be drawn by trained police officers with regard to drug activity." *Id.* We therefore hold that, under the totality of the circumstances in this case, the actions of the police were proper. Because we find that the appellee's arrest was based upon probable cause, the subsequent search incident to arrest was lawful. Thus, it was error for the lower court to grant appellee's motion to suppress.[2]

Order reversed.

1. Officer Jones had been present when the contents of such packets, seized in numerous previous arrests, were tested. All were found to contain cocaine. *See* N.T. 7/21/92 at 8–9.

2. Having reached this conclusion, there is no need to discuss the Commonwealth's second claim of error regarding the validity of the alleged *Terry* stop.