762 A.2d 376 (2000)
In the Interest of J.V.
Appeal of J.V.
Superior Court of Pennsylvania.
Submitted August 7, 2000.
Filed November 1, 2000.
*377 Mitchell A. Kaufman, Public Defender, Pittsburgh, for appellant.
Robert A. Willig, Asst. Dist. Atty., Pittsburgh, for Commonwealth, appellee.
BEFORE: CAVANAUGH, POPOVICH and OLSZEWSKI, JJ.
CAVANAUGH, J.:
¶ 1 This appeal is taken from the order of the trial court which adjudicated appellant delinquent. The issue before this court is whether, pursuant to the Fourth Amendment to the United States Constitution and Article I, Section 8 of the Pennsylvania Constitution, the trial court properly denied appellant's motion to suppress physical evidence obtained pursuant to a protective pat-down. Because we find that the police lacked a reasonable belief that the appellant was armed and dangerous to justify the pat-down, we reverse and remand for a new trial.
The facts as gleaned from the record are as follows:
¶ 2 On November 12, 1998, at approximately 7:35 a.m., six police officers entered a two-story house in the city of McKeesport, Allegheny County, to execute a search warrant for drugs. West Homestead police officer Randal Schirra was the last officer to enter the home and it was his duty to secure the living room area on the first floor.
¶ 3 Appellant was present in the house and asleep on a couch in the living room. Another individual, Q.B., was on another couch on the other side of the living room.
*378 Appellant was neither a resident of the house nor the target of the search warrant. Appellant did not appear to be dangerous and was not a threat but Officer Schirra awakened the appellant and ordered him to stand so he could perform a weapons pat-down for officer safety.
¶ 4 Officer Schirra frisked appellant from the shoulders down. Schirra felt a pager and a wad of money but did not retrieve them. When Schirra reached appellant's left sock, he testified that he "felt three hard chunky objects in [appellant's] sock and [he] felt the plastic bag, it was a hard chalky substance, which based on [his] training and experience [he] knew to be crack cocaine." Officer Schirra reached into the sock and removed two individually wrapped baggies of crack cocaine and a brown paper bag containing a baggie of crack cocaine[1]. The drugs were seized and appellant placed under arrest.
¶ 5 On November 16, 1998, a juvenile petition charged appellant under incident one as follows:
Violation of the Controlled Substance, Drug, Device and Cosmetic Act, Act 64 [Section 13(a)30]F (Possession with Intent to Deliver Crack/Cocaine)
Violation of the Controlled Substance, Drug, Device and Cosmetic Act, Act 64 [Section 13(a)16]M (Possession of Crack/Cocaine).
¶ 6 Also on November 16, 1998, Master Ronda Winnecor held a detention hearing pursuant to the petition above. Finding it in the best interest of the child and the community, the master had appellant detained at Shuman Detention Center.
¶ 7 On November 30, 1998, appellant was released from detention and placed on electric home monitor (EHM) in the custody of his father and the petition was continued until January 14, 1999. Pursuant to his release, appellant was to check with the school base probation officer daily and have no contact with co-defendant[2]. On January 14, 1999, the petition was continued until February 23, 1999.
¶ 8 On February 23, 1999, appellant appeared before the Honorable Cheryl Allen Craig, J., for a delinquency hearing. Appellant was represented by Todd Hollis, Esq. who raised an oral suppression motion during the hearing. Because the search was predicated solely on appellant being present, counsel argued that police had no justification to pat-down appellant and that all baggies of crack cocaine subsequently retrieved from appellant's sock were fruits of an illegal search. Appellant did not contest that a total of 12.99 grams of crack/cocaine was found on his person or that he possessed the crack/cocaine with an intent to deliver. The court heard testimony and continued the case to review the law concerning the suppression issue and allow both appellant's counsel and the Commonwealth an opportunity to brief the issues.
¶ 9 On March 4, 1999, the court resumed the delinquency hearing and denied appellant's motion to suppress the evidence. Thereafter, the court adjudicated appellant delinquent pursuant to incident one of the petition and suspended disposition for 20 days. On March 25, 1999, appellant was committed to the Summit Detention Center as of March 9, 1999; his detention to be reviewed in six months[3]. On April 5, 1999, a notice of appeal was filed. On June 28, 1999, appellant filed a Concise Statement of Matters Complained of on Appeal pursuant to Pa.R.A.P.1925(b) and order of the court. On January 20, 2000, *379 the trial court issued its opinion addressing the matters complained of on appeal and affirming its decision. This appeal followed.
¶ 10 Appellant raises the following issue, verbatim, for our review:
POLICE SEARCH OF J.V., A MINOR, WHO WAS FOUND SLEEPING ON THE COUCH IN A HOUSE WHERE A SEARCH WARRANT WAS BEING EXECUTED WAS UNCONSTITUTIONAL WHERE THERE WAS NO BASIS TO CONDUCT A TERRY SEARCH AND, IN THE ALTERNATIVE, THE SEARCH CONDUCTED OF J.V. EXCEEDED THE SCOPE OF A PERMISSIBLE SEARCH FOR WEAPONS.
¶ 11 In reviewing an order entered by a suppression court, we are governed by the following standards:
We must first ascertain whether the record supports the factual findings of the suppression court, and then determine the reasonableness of the inferences and legal conclusions drawn therefrom. Commonwealth v. Burnside, 425 Pa.Super. 425, 625 A.2d 678 (1993). In reviewing the denial of a motion to suppress evidence, "we consider only the evidence of the prosecution's witnesses and so much of the evidence for the defense as, fairly read in the context of the record as a whole, remains uncontradicted." Commonwealth v. Reddix, 355 Pa.Super. 514, 513 A.2d 1041 (1986). When the evidence supports the suppression court's findings of fact on a motion to suppress, this Court may reverse only when the legal conclusions drawn from those facts are erroneous. Commonwealth v. Quiles, 422 Pa.Super. 153, 619 A.2d 291 (1993) (en banc). However, we are bound by the trial court's findings of fact only to the extent that they are supported by the record. Commonwealth v. Martinez, 403 Pa.Super. 125, 588 A.2d 513 (1991).
Commonwealth v. Long, 455 Pa.Super. 337, 688 A.2d 198, 199-200 (1996) (citing Commonwealth v. Wilson, 440 Pa.Super. 269, 655 A.2d 557 (1995)).
¶ 12 Neither the Pennsylvania nor United States Constitution prohibits warrantless searches but rather protects people from unreasonable searches and seizures. PA. CONST. art. I § 8; U.S. CONST. amend. IV. For purposes of the Fourth Amendment, a "search" is an examination of an individual's house, building or person for the purpose of discovering contraband or some evidence of guilt to be used in the prosecution of a criminal action. Commonwealth v. Gibson, 536 Pa. 123, 638 A.2d 203, 205 (1994).
¶ 13 Here, the officer conducted a search for weapons called a pat-down or a Terry frisk. When reviewing an officer's decision to conduct such a search, the right to be free from unreasonable search and seizures must be balanced against the right of an officer to be secure in his personal safety and to prevent harm to others. Commonwealth v. Zhahir, 561 Pa. 545, 751 A.2d 1153, 1158 (2000). Our jurisprudence finds that the interests of officer safety justify a Terry frisk when the standards below are satisfied.
¶ 14 The Fourth Amendment to the United States Constitution and Article 1, Section 8 of the Pennsylvania Constitution allow the police to stop and briefly detain individuals whenever they have reasonable suspicion, based on specific and articulable facts, that criminal activity may be afoot. Commonwealth v. Melendez, 544 Pa. 323, 676 A.2d 226, 228 (1996) (citing Commonwealth v. Hicks, 434 Pa. 153, 253 A.2d 276, 279-280 (1969)) (interpreting Terry v. Ohio, 392 U.S. 1, 20, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968)). In addition, if the police reasonably believe that a suspect legally detained may be armed and dangerous, then they are permitted to conduct a limited pat-down search of the suspect's outer clothing for weapons to ensure their safety. Ybarra v. Illinois, 444 U.S. 85, 92-93, 100 S.Ct. 338, 62 L.Ed.2d 238 (1979) (citing Terry v. Ohio, 392 U.S. 1, 21, *380 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968); Commonwealth v. Allen, 555 Pa. 522, 725 A.2d 737, 740 (1999)). To assess whether a reasonable belief existed, consideration is given to the specific reasonable inferences which the officer can draw from the facts in the light of his experience but no consideration is given to his unparticularized suspicions or hunches. Zhahir, 751 A.2d at 1158 (citing Terry, supra, at 27, 88 S.Ct. 1868).
¶ 15 Here, the parties are in substantial agreement to all pertinent facts which are as follows: the search of appellant occurred inside the residence of another where appellant was an overnight guest; police were present in the house pursuant to a defective warrant[4] which authorized a search of the residence; appellant was sleeping when the police entered the residence to be searched; appellant did not pose a threat to police upon their entrance or at anytime during the execution of the warrant; appellant did not raise his arms or act suspiciously; appellant cooperated with all police orders and instructions; appellant was lawfully detained during the search of the premises; that the police officer, to ensure his safety, frisked appellant for weapons simply because appellant was on the premises; and, the drugs were detected and subsequently seized pursuant to this pat-down[5]. However, appellant contends the suppression court's legal conclusion that a Terry frisk was justified is erroneous. In sum, the issue is whether police executing a search warrant for drugs at a residence may perform a pat-down for weapons on anyone merely present on the premises for officer safety.
¶ 16 There is caselaw directly on point which supports appellant's position. In Commonwealth v. Luddy, 281 Pa.Super. 541, 422 A.2d 601, 606 (1980), when the police arrived at the Luddy residence to execute a search warrant for drugs, they spotted Edward Luddy at a shed near the house and apprehended him. While Edward Luddy was listed as a resident at the property to be searched, the warrant did not authorize the search of his person nor was Luddy listed on the probable cause section of the warrant. After detaining Luddy, the officer conducted a patdown for weapons during which he felt what he thought was a small knife. The officer retrieved the object which turned out to be a syringe and arrested appellant for possession of a syringe. A full search incident to arrest uncovered methamphetamine and marijuana. Id.
¶ 17 At trial, Edward Luddy made a motion to suppress the drugs. The trial court denied the motion and Luddy was convicted. On appeal, this court found the motion to suppress should have been granted. Specifically, we found the initial patdown search illegal and thus, the drugs were inadmissible as fruits of an illegal search. Id. at 607-608. In our analysis, we stated that "it is settled that a warrant authorizing the search of a building does *381 not authorize the search of either the persons, or the property, of those who merely happen to be present when the warrant is executed." Luddy, 422 A.2d at 606[6] (citing Commonwealth v. Reece, 437 Pa. 422, 263 A.2d 463 (1970) (also a search warrant for drugs)).
¶ 18 The Luddy decision relied heavily upon the United States Supreme Court's reasoned holding in Ybarra v. Illinois, 444 U.S. 85, 100 S.Ct. 338, 62 L.Ed.2d 238 (1979), a case which also dealt with a search warrant for drugs. In Ybarra, the police had a warrant to search a tavern for heroin and conducted a "cursory search for weapons" of all customers present in the tavern. Id. at 88, 100 S.Ct. 338. Ybarro, a customer, was searched, like appellant here, simply because he was present. Illinois contended that police were able to conduct a Terry search for police safety in securing the place to be searched. Id. at 92, 100 S.Ct. 338. The Court held that when conducting a Terry frisk police need to have a reasonable belief that the person searched is "armed and presently dangerous"; but, mere presence at the premises to be searched does not justify a belief that the individual is armed and dangerous. Id. at 92-94, 100 S.Ct. 338.
¶ 19 Here, the Commonwealth does not dispute that Luddy and Ybarra are on point and state the current law. Rather, the Commonwealth asks us to reconsider and then override the law as it pertains to warrants for drugs. Its supporting basis is that the drug environment is a lot more violent today than 20 years ago. Over this period, the Commonwealth contends that drugs and guns have become co-existent. It is argued that the increased danger to police officers executing drug warrants[7] supports a finding that police have a right to perform a Terry frisk for weapons upon all those present at the residence.
¶ 20 In Zhahir, 751 A.2d at 1162-1163, the Supreme Court adopted the plain feel doctrine as a matter of Pennsylvania law[8] but also reviewed the theory that courts can categorically use a "guns follow drugs" presumption to justify a frisk of an individual lawfully detained. The court stated, "taking judicial notice that all drug dealers may be armed as in and of itself a sufficient justification for a weapons frisk clashes with the totality standard, as well as the premise that the concern for safety of the officer must arise form the facts and circumstances of the particular case." Id. at 1163. The court determined that the presumption that guns follow drugs is an "overbroad generalization" and cannot support a justified belief that an individual under investigation is armed and presently dangerous. Id. To the extent our highest court's reasoned analyses may be dicta, we find the reasoning persuasive and on the same principles enumerated therein reject the Commonwealth's request to create a bright line rule to allow a Terry frisk of all people merely present during the execution of a drug warrant. Moreover, as a panel of this Court we may *382 not reject existing panel authorities on the precise issue. See Commonwealth v. Aziz, 724 A.2d 371, 375-376 (Pa.Super.1999), appeal denied, ___ Pa. ___, 759 A.2d 919, 2000 Pa. Lexis 1689, at *1 (Pa. July 14, 2000)(we are bound by the precedent created by a panel of this court and are not at liberty to refrain from following it).
¶ 21 In conclusion, since the search warrant in the instant dispute did not authorize the search of appellant and appellant gave no consent to the search, the officer needed a reasonable belief that appellant was armed and dangerous to perform a Terry frisk for weapons. Both the parties and the record make it abundantly clear that the justification for the officer's pat-down for weapons was mere presence at the residence to be searched. According to Luddy[9] and Ybarra, mere presence during the execution of a search warrant is insufficient ground, in and of itself, for a protective pat-down. Accordingly, no justification existed for believing appellant was armed and dangerous. Thus, the search was unreasonable and violated of Fourth Amendment to the United States Constitution and Article I, Section 8 of the Pennsylvania Constitution. Since the baggies containing the drugs were the fruits of this illegal search, the motion to suppress should have been granted.
¶ 22 Our finding that the search of appellant was illegal means we need not address appellant's claim that the search, if legal, exceeded the legal scope of a patdown for weapons.
¶ 23 Order is reversed and a new trial granted.
¶ 24 Jurisdiction relinquished.
NOTES
[1] All the baggies seized were sent to the crime lab and counsel stipulated that the substance (12.99 grams) tested positive for cocaine base.
[2] Appellant was charged with another juvenile under the same juvenile petition. There are no issues before us concerning appellant's co-defendant.
[3] On October 21, 1999, appellant was transferred from the Summit Academy to custody of the Academy. On January 20, 2000 appellant was released from the Academy and the case closed.
[4] Probable cause to issue the warrant, which this court is not called upon to review, was amply supported by information from a confidential informant and from several controlled drug buys. However, the trial court clearly determined, without specifying the exact reason(s), that the warrant was defective. See Trial Court Opinion, 1/20/00, p. 4.
[5] The trial court opinion used the word "visible" when recapping the arresting officer's testimony. The use of this word should be put in context to avoid confusion. The court wrote that when frisking appellant from shoulders down the police officer felt a bulge, which was visible, in appellant's left sock which he immediately knew to be crack cocaine. There is nothing in the record that explicitly makes that allegation but the court could have determined that during the pat-down search the officer's hands outlined a substance (crack cocaine) which was bulging out of appellant's sock. If a bulge in appellant's sock was ever visible, the bulge was not apparent until the police officer's hands outlined the substance. Thus, the decision to initiate a Terry frisk was not, in any way, based on viewing a bulge. All parties agree and the record substantiates that the only basis for the frisk was appellant's presence on the premises. The Commonwealth is now asking this court to find that presence alone is sufficient when executing a warrant for drugs.
[6] In Commonwealth v. Reese, 520 Pa. 29, 549 A.2d 909, 910 (1988), the scope of Luddy was limited in areas not relevant to our review. There, the Supreme Court held that police may search the personal property of those present during the execution of the warrant if the property was not being worn by a person or an extension of the person. In doing so, the court made explicit that the search of a person who merely happened to be present was still not authorized. Reese, 549 A.2d at 912.
[7] Presumably, this proposed blanket rule would also be applicable to warrants, like the underlying one here, that are defective. Although the warrant is not within our review, the record indicates that it was deficient despite being issued on probable cause.
[8] The plain feel doctrine was first adopted In Minnesota v. Dickerson, 508 U.S. 366, 113 S.Ct. 2130, 124 L.Ed.2d 334 (1993). There the United States Supreme Court held that an officer, who is legally in place, may properly seize non-threatening contraband detected through the sense of touch during a protective pat-down for weapons when the incriminating nature is immediately apparent from its tactile impression. Id. at 373-375, 113 S.Ct. 2130.
[9] See Commonwealth v. Wilson, 429 Pa.Super. 197, 631 A.2d 1356, 1357 (1993), for the most recent confirmation of the Luddy principle of law where this court, citing Luddy, stated "... for a warrant authorizing the search of a building does not authorize a search of those present when the warrant is executed."