# COMMONWEALTH of Pennsylvania

## v.

## Michael LAKE, Appellant.

Commonwealth Court of Pennsylvania.

Submitted on Briefs April 1, 2005.

Decided July 1, 2005.

Reargument/Reconsideration Denied
En Banc Aug. 24, 2005.

Karl E. Rominger, Carlisle, for appellant.

Dwight C. Harvey, McConnellsburg, for appellee.

BEFORE: PELLEGRINI, Judge, LEAVITT, Judge, and FLAHERTY, Senior Judge.

OPINION BY Judge LEAVITT.

Michael Lake (Lake) appeals the judgment of sentence imposed by the Court of Common Pleas of the 39th Judicial District, Fulton County Branch (trial court). In this case, we consider whether a "kill list" of animals dispatched by Lake was properly admitted into evidence at Lake's criminal trial for violations of the Pennsylvania Game and Wildlife Code.

The background to this case is as follows. On November 25, 2002, officers of the Pennsylvania Game Commission conducted a search of Lake's home pursuant to a warrant.[1] The search warrant was issued to allow the officers to inspect rifles, cartridges, unlawfully possessed game or wildlife and game or wildlife parts in Lake's possession. During the search, an officer opened the ammunition drawer of the gun cabinet and spotted a small spiral bound notebook that was open and easily legible. The second entry on the open page read: "July 25, 1984, six point, 218[B]." Notes of Testimony, 11/18/03, at 10 (N.T. at ——). The officer recognized the document as a "kill list" and explained, "[t]here was a date for July where there had been a deer kill and there's never been, to my recollection, a legal hunting season in Pennsylvania in July." N.T. at 10. A closer inspection revealed that the notebook detailed a twenty-year history of animals killed, the dates of their deaths and the weapons used to accomplish the same. The notebook was seized along with deer antlers and turkey beards.

On March 14, 2003, Lake was charged with 87 violations of Section 2307 of the Pennsylvania Game and Wildlife Code (Game Code), 34 Pa.C.S. § 2307.[2] An omnibus pretrial hearing was held on November 18, 2003, to address Lake's motion to suppress the use of the notebook at trial. Lake contended that because the notebook had not been identified as a target of the search, it was improperly seized and should not be used as evidence at his trial. The trial court rejected this argument, holding that the notebook fell within the plain view exception and, thus, a warrant was not needed to authorize its seizure. In reaching this conclusion, the trial court relied upon *Commonwealth v. Ellis*, 541 Pa. 285, 297, 662 A.2d 1043, 1049 (1995), that sets forth the essential elements of the plain view doctrine:

> First, the evidence must be seen from a lawful vantage point. Second, it must be immediately apparent to the viewer

---

1. The officers obtained a warrant to search Lake's house following an illegal killing of a whitetail deer the previous night. At the pretrial hearing on November 18, 2003, the parties stipulated that the search warrant was supported by probable cause, including statements by witnesses that led the officers to believe Lake had shot the deer.

2. It states in pertinent part as follows:

> It is unlawful for any person to aid; abet, attempt or conspire to hunt for or take or possess, use, transport or conceal any game or wildlife unlawfully taken or not properly marked or any part thereof, or to hunt for, trap, take, kill, transport, conceal, possess or use any game or wildlife contrary to the provisions of this title.

34 Pa.C.S. § 2307(a).

that the object observed is incriminating evidence.

The trial court found that the officers had a "lawful" view of the notebook and that it was "immediately apparent" to them that the notebook was incriminating evidence.

Thereafter, on September 10, 2004, the trial court conducted a trial, which resulted in convictions on 83 of the 87 violations of the Game Code for which Lake was charged. The trial court imposed fines in the amount of $27,000 and costs of $864. Lake has appealed to this Court, seeking a new trial.

■ On appeal,[3] Lake raises one issue. He contends that the plain view doctrine did not authorize the Commonwealth's seizure of the notebook and, thus, it was improperly used as evidence against him. Lake does not dispute that the notebook was in plain view, *i.e.,* seen from a lawful vantage point by the Game Commission officer. However, he contends that the notebook was not *immediately apparent as incriminating evidence.* Lake observes that deer and turkey can be taken lawfully every day of the year in places other than Fulton County, Pennsylvania;[4] indeed, one can hunt all year at game preserves within the Commonwealth. Because the officer who seized the notebook could not eliminate the lawful possibilities of what the list documented, the notebook was not, on its face, incriminating. Accordingly, the notebook should not have been seized during the search nor used as

evidence at Lake's criminal trial. The Commonwealth counters that because the officer had a reasonable belief the notebook recorded illegal deer kills, and not some innocent activity,[5] the notebook was immediately apparent as incriminating.

In expounding upon the plain view doctrine, the U.S. Supreme Court has explained what is required for it to be "immediately apparent" that evidence is incriminating:

> Decisions by this Court since *Coolidge* [*v. New Hampshire,* 403 U.S. 443, 91 S.Ct. 2022, 29 L.Ed.2d 564 (1971)] indicate that the use of the phrase "immediately apparent" was very likely an unhappy choice of words, since it can be taken to imply that an unduly high degree of certainty as to the incriminating character of the evidence is necessary for an application of the "plain view" doctrine.

*Texas v. Brown,* 460 U.S. 730, 741, 103 S.Ct. 1535, 75 L.Ed.2d 502 (1983). In *Payton v. New York,* 445 U.S. 573, 587, 100 S.Ct. 1371, 63 L.Ed.2d 639 (1980) (emphasis added), the Supreme Court held that "the seizure of property in plain view ... *is presumptively reasonable, assuming that there is probable cause to associate the property with criminal activity.*" Probable cause requires a reasonable belief that an item is evidence of crime, but

> it does not demand any showing that such a belief be correct or more likely true than false. A "practical, nontechni-

---

3. When reviewing a motion to suppress evidence, our scope of review is well established. Factual findings unsupported by the evidence may be rejected, but if the record supports the suppression court's factual findings, reversal of a suppression court's actions is justified only if the inferences and legal conclusions drawn therefrom are erroneous. *Commonwealth v. Hannon,* 837 A.2d 551, 553 (Pa.Super.2003).

4. Lake resides in Fulton County, which was identified in the criminal citations as the location of the offenses involving the possession of the game parts.

5. Travis Pugh, Conservation Officer for the Game Commission, testified that the entries in the notebook, describing antler points, width, velvet, and beard length, were matched to specimens taken from Lake's home.

cal" probability that incriminating evidence is involved is all that is required. *Texas,* 460 U.S. at 742, 103 S.Ct. 1535 (citations omitted).

■ Our Pennsylvania appellate courts have established that probable cause falls short of certainty. Probable cause will be found where "criminality is one reasonable inference, not necessarily even the most likely inference." *Commonwealth v. Lindblom,* 854 A.2d 604, 607 (Pa.Super.2004). A court must look at the totality of the circumstances known to police at the time of the search, and view those circumstances through the eyes of the trained officer, not those of an average citizen. *Commonwealth v. Burnside,* 425 Pa.Super. 425, 625 A.2d 678, 681 (1993).

■ Guided by these principles, we conclude that the officers had probable cause to believe that the notebook they seized was incriminating.[6] The officer who found the notebook was investigating the illegal killing of a whitetail deer that took place the evening before the search of Lake's home. The purpose of that search was to obtain the rifle that was used in the kill as well as other evidence of poaching. The officer immediately identified the notebook as a "kill list;" he disregarded other papers and records contained in the ammunition drawer that were not incriminating.[7] Indeed, he stated that, "nothing ... leaped out like this log of the illegal kills." N.T. at 16. On cross-examination, the officer confirmed that he "grabbed the book" because he saw "7/28/84 six point," noting that deer cannot be shot in July in Pennsylvania. N.T. at 12, 10. His conclusion

that it was a list of illegal kills was immediate and certain, demonstrating a level of expertise that is to be expected of a Game Commission officer.[8]

The trial court correctly applied the "immediately apparent" standard of the *Ellis* test. It was not necessary, as Lake suggests, for the officer to refrain from seizing the notebook if it was conceivable that it recorded a history of lawful kills in exotic locations. It was reasonable for the officer to believe that the notebook recorded animal kills in Pennsylvania, such as the deer kill that had taken place the evening before the search. Accordingly, the officer had probable cause for believing the notebook was incriminating evidence; the notebook was lawfully seized under the plain view doctrine; and it was properly used at trial.

Accordingly, the order of the trial court is affirmed.

### ORDER

AND NOW, this 1st day of July, 2005, the order of the Court of Common Pleas of the 39th Judicial District, Fulton County Branch, dated September 10, 2004, in the above-captioned matter is hereby affirmed.

---

6. It is undisputed that the notebook was in plain view. The first prong of *Ellis* is conceded by Lake.

7. The officer explained that "[a]ll the other documents were like warranty cards and there was a paperback book and some other trivial things like that." N.T. at 16.

8. The trial court noted that it is common knowledge among hunters that a list is not maintained for spotlighting deer, and that when a weapon is included on a list of game animals, it is apparent to anyone with hunting experience that it is a list of kills.